**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | ) | |
| | ) | Civil Action No. 07-00403 (TFH) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the United States

Department of Justice hereby respectfully moves this Court for judgment as a matter of law.  The

reasons for this motion are set forth in defendant's Memorandum of Points and Authorities in

Support of the Motion for Summary Judgment filed herewith.

Dated: May 11, 2007.                          Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General, Civil Division

JEFFREY A. TAYLOR
United States Attorney

JOSEPH H. HUNT
Director, Federal Programs Branch

JOHN R. TYLER (DC# 297713)
Senior Trial Counsel

____/s/ Rupa Bhattacharyya_____
RUPA BHATTACHARYYA (VA# 38877)
Senior Trial Counsel
Federal Programs Branch, Civil Division
United States Department of Justice
P.O. Box 883, 20 Massachusetts Ave., N.W.
Washington, D.C.  20044
Tel: (202) 514-3146; Fax: (202) 318-7593
Email: rupa.bhattacharyya@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | ) | |
| | ) | Civil Action No. 07-00403 (TFH) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff, the Electronic Frontier Foundation ("EFF"), challenges the decision of the Office of Intelligence Policy and Review ("OIPR") of the United States Department of Justice ("DOJ" or the "Department") to withhold documents responsive to EFF's January 23, 2007, request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff's FOIA request seeks orders of the Foreign Intelligence Surveillance Court, and accompanying procedures, that authorize the United States Government to collect foreign intelligence by targeting for collection international communications into or out of the United States where there is probable cause to believe that one of the communicants is a member or agent of al Qaeda or an associated terrorist organization.

Although the existence of these orders was publicly announced by the Attorney General on January 17, 2007, the documents themselves are highly classified and directly implicate the methods, means, sources, and targets of foreign intelligence collection in the ongoing Global War Against Terror. They cannot be released without seriously compromising that effort and causing exceptionally grave damage to the national security of the United States. FOIA explicitly exempts such documents from public disclosure, see 5 U.S.C. §§ 552(b)(1), (b)(3), & (b)(7)(A), and OIPR's

determination to withhold the documents was entirely proper. In addition, because OIPR has otherwise responded properly to plaintiff's request under FOIA, DOJ is entitled to summary judgment under Federal Rule of Civil Procedure 56.

## BACKGROUND

On January 17, 2007, the Attorney General, in a letter to Senate Judiciary Chairman Patrick Leahy, and Ranking Minority Judiciary Member Arlen Specter, announced that on January 10, 2007, the Foreign Intelligence Surveillance Court ("FISC") had issued orders authorizing the United States Government to collect foreign intelligence by targeting for collection international communications into or out of the United States where there is probable cause to believe that one of the communicants is a member or agent of al Qaeda or an associated terrorist organization. See Declaration of Matthew G. Olsen ("Olsen Decl."), attached hereto as Ex. A, ¶ 4 & Ex. A. That same day, Presidential Spokesperson Tony Snow discussed the orders in a White House press briefing. See http://www.whitehouse.gov/news/releases/2007/01/20070117-5.html.

By letter dated January 23, 2007 addressed to OIPR, plaintiff EFF sought "copies of all Foreign Intelligence Surveillance Court ('FISC') orders referenced by the Attorney General in his letter to [Senators] Leahy and Specter, and all FISC rules and guidelines associated with such orders and/or referenced by Mr. Snow in the January 17 press briefing." Olsen Decl. ¶ 5 & Ex. B.

OIPR received EFF's request on January 23, 2007, and acknowledged receipt by letter dated January 26, 2007. Olsen Decl. ¶ 6 & Ex. C. EFF also requested expedited processing of its FOIA request, and DOJ granted the request for expedited treatment. Id. & Ex. D.

Upon receiving EFF's request, OIPR initiated a search for responsive documents. Olsen Decl. ¶ 7. Because EFF's request was relatively narrow, and sought documents recently referenced in public statements by high-level government officials, responsible persons within OIPR were asked to locate the responsive documents, and did so. Id. ¶¶ 7-8. By letter dated March 9, 2007, OIPR

responded to EFF's request, advising that it had located responsive documents, but that the responsive materials was being withheld pursuant to the Exemptions provided for in FOIA. See id. ¶¶ 9-10 & Ex. D.

## ARGUMENT

## DOJ IS ENTITLED TO SUMMARY JUDGMENT

The FOIA's "basic purpose" reflects a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989). "Congress recognized, however, that public disclosure is not always in the public interest." Cent. Intelligence Agency v. Sims, 471 U.S. 159, 167 (1985). The FOIA is designed to achieve a "workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy." John Doe, 493 U.S. at 152 (quoting H.R. Rep. No. 1497, 89th Cong., 2 Sess. 6 (1966), reprinted in 1966 U.S.C.C.A.N. 2416, 2423); see also Am. Civil Liberties Union v. Dept. of Justice ("ACLU"), 265 F. Supp. 2d 20, 27 (D.D.C. 2003) (Huvelle, J.) ("FOIA represents a carefully considered balance between the right of the public to know what their government is up to and the often compelling interest that the government maintains in keeping certain information private, whether to protect particular individuals or the national interest as a whole").

To that end, FOIA mandates disclosure of government records unless the requested information falls within one of nine enumerated exceptions, see 5 U.S.C. § 552(b). "A district court only has jurisdiction to compel an agency to disclose improperly withheld agency records," i.e., records that do "not fall within an exemption." Minier v. Cent. Intelligence Agency, 88 F.3d 796, 803 (9th Cir. 1996) (emphasis by the court); see also 5 U.S.C. § 552(a)(4)(B) (providing jurisdiction only to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld. . . ."); Kissinger v. Reporters Comm. for Freedom of the Press,

445 U.S. 136, 150 (1980) ("Under 5 U.S.C. § 552(a)(4)(B)[,] federal jurisdiction is dependent upon a showing that an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.'"). Despite the "liberal congressional purpose" of FOIA, the statutory exemptions must be given "meaningful reach and application." John Doe, 493 U.S. at 152. "Requiring an agency to disclose exempt information is not authorized. . . ." Minier, 88 F.3d at 803 (quoting Spurlock v. Fed. Bureau of Investigation, 69 F.3d 1010, 1016 (9th Cir. 1995)).

The government bears the burden of proving that the withheld information falls within the exemptions it invokes. 5 U.S.C. § 552(a)(4)(b). Summary judgment should be granted if the movant has shown, when the facts are viewed in the light most favorable to the nonmovant, that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Greene v. Dalton, 164 F.3d 671, 674 (D.C. Cir. 1999). A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288 (1968)). In a FOIA case, the court may award summary judgment to an agency on the basis of information provided in affidavits or declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir.1981).

In evaluating the applicability of FOIA exemptions for purposes of deciding this summary judgment motion, the Court must be mindful that the information sought by plaintiff "implicat[es] national security, a uniquely executive purview." Ctr. for Nat'l Security Studies v. Dept. of Justice, 331 F.3d 918, 926 (D.C. Cir. 2003), cert. denied, 540 U.S. 1104 (2004). Both the Supreme Court

and the Court of Appeals have specifically recognized the "propriety of deference to the executive in the context of FOIA claims which implicate national security." Id. at 927-28 (citing, inter alia, Sims, supra); see also Ctr. for Nat'l Security Studies, 331 F.3d at 927 ("terrorism or other special circumstances" might warrant "heightened deference to the judgments of the political branches") (quoting Zadvydas v. Davis, 533 U.S. 678, 696 (2001)).

Indeed, courts have routinely and repeatedly emphasized that "weigh[ing] the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the [nation's] intelligence-gathering process" is a task best left to the Executive Branch and not attempted by the judiciary. Sims, 471 U.S. at 180; see also Ctr. for Nat'l Security Studies, 331 F.3d at 928 ("the judiciary is in an extremely poor position to second-guess the executive's judgment in [the] area of national security"); Halperin v. Cent. Intelligence Agency, 629 F.2d 144, 148 (D.C. Cir. 1980) ("Judges . . . lack the expertise necessary to second-guess [] agency opinions in the typical national security FOIA case").[1] Thus, courts have "consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review." Ctr. for Nat'l Security Studies, 331 F.3d at 927. Instead, "[a]t least in the national security context, the reviewing court must give 'substantial

---

[1] Moreover, as courts have repeatedly noted, when evaluating the propriety of an agency's FOIA response, it must be remembered that the Government has no capacity to distinguish between FOIA requesters. See Bassiouni v. Cent. Intelligence Agency, 392 F.3d 244, 246 (7th Cir. 2004) (noting that "any member of the public may invoke the FOIA, and the agency must disregard the requester's identity."), cert. denied, 545 U.S. 1129 (2005); accord Students Against Genocide v. Dept. of State, 257 F.3d 828, 837-38 & n.12 (D.C. Cir. 2001). Any information determined to be available to the plaintiff here is also available to the next requester to seek it, whether that requester is an individual in Peoria, a political interest group, "North Korea's secret police [or] Iran's counterintelligence service," Bassiouni, 392 F.3d at 246, or a member of al Qaeda. Where national security interests of the type identified herein are implicated, the harms to national security that would result from compelling release of the sorts of information sought by plaintiff in its FOIA requests cannot be underestimated. "Hostile entities," id., including agents of al Qaeda and its affiliates, would no doubt be greatly interested in the opportunity to lay bare the details of the United States' intelligence gathering programs.

weight'" to an agency's declarations.  ACLU, 265 F. Supp. 2d at 27 (quoting King v. Dept. of Justice, 830 F.2d 210, 217 (D.C. Cir. 1987)).

Given these standards of review, as the discussion below and the accompanying declaration demonstrate, the documents withheld by OIPR plainly fall within exemptions to FOIA's disclosure requirements.   DOJ thus properly withheld the documents and is entitled to summary judgment.

## I.     OIPR'S DOCUMENT SEARCH WAS ADEQUATE.

To obtain summary judgment on the issue of the adequacy of the records search, an agency must show that "viewing the facts in the light most favorable to the requester, . . . it has conducted a search reasonably calculated to uncover relevant documents."  Steinberg v. Dept. of Justice, 23 F.3d 548, 552 (D.C. Cir.1994) (citing Weisberg v. Dept. of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)) (internal quotes omitted).  An agency must show that it made a "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  Oglesby v. U.S. Dept. of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990); accord Campbell v. U.S. Dept. of Justice, 164 F.3d 20, 27 (D.C. Cir. 1998).  An agency's search need not be exhaustive, merely reasonable.  See Western Ctr. for Journalism v. Internal Revenue Serv., 116 F. Supp. 2d 1, 8 (D.D.C. 2000) (Kollar-Kotelly, J.), aff'd, 22 Fed. Appx. 14 (D.C. Cir. 2001); see also Judicial Watch v. Rossotti, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) (Collyer, J.) ("Perfection is not the standard by which the reasonableness of a FOIA search is measured.").

Thus, "the adequacy of an agency's search is measured by a 'standard of reasonableness' and is dependent upon the circumstances."  Schrecker v. U.S. Dept. of Justice, 349 F.3d 657, 662 (D.C. Cir. 2003) (quoting Truitt v. Dept. of State, 897 F.2d 540, 542 (D.C. Cir. 1990)) (internal citation omitted).  In examining the adequacy of an agency's search, therefore, the Court must not address "whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate."  Steinberg, 23 F.3d at 551 (citing Weisberg,

745 F.2d at 1485).  In the absence of "countervailing evidence" or "substantial doubt," agency affidavits or declarations describing such a reasonable and adequate search are sufficient to demonstrate an agency's compliance with FOIA.  See Iturralde v. Comptroller of Currency, 315 F.3d 311, 314 (D.C. Cir. 2003) (citations omitted).

As described in the Declaration of Matthew G. Olsen, the EFF request at issue here is a narrow one; it sought "copies of all Foreign Intelligence Surveillance Court ('FISC') orders referenced by the Attorney General in his letter to [Senators] Leahy and Specter, and all FISC rules and guidelines associated with such orders and/or referenced by Mr. Snow in the January 17 press briefing."  See Olsen Decl. ¶ 5 & Ex. B.  In other words, plaintiff's request sought specific documents recently referenced in public statements by high-level administration officials.  OIPR identified those persons with responsibility for the subject matter relating to plaintiff's request and asked them to locate the records that plaintiff's request had specifically identified.  Id. ¶ 7.  As Mr. Olsen attests, he "is familiar with the documents sought by plaintiff's request," and is "confident that the search initiated by OIPR retrieved all documents responsive to the request."  Id. ¶ 8.

The reasonableness of this search cannot be contested.  See Gilchrist v. Dept. of Justice, 2006 WL 3091534, *3 (D.D.C., 2006) (Leon, J.) (where plaintiff's FOIA request sought one specific document, "[i]t was not unreasonable for [agency] staff to limit the searches to the specific document plaintiff identified in his FOIA request"); see also Campbell, 164 F.3d at 27; Steinberg, 23 F.3d at 548; Oglesby, 920 F.2d at 68; Weisberg, 745 F.2d at 1485.  DOJ, accordingly, is entitled to summary judgment with respect to the adequacy of its search in response to plaintiff's FOIA request.

## II.    DOJ PROPERLY WITHHELD THE RESPONSIVE RECORDS UNDER FOIA.

The material withheld by OIPR in response to EFF's FOIA request consists of orders signed by the FISC that authorize certain intelligence collection activity, and the procedures that regulate the acquisition, retention and dissemination of information about United States persons, including

persons who are not the targets of FISA collection.  Olsen Decl. ¶ 11.  The responsive documents are properly withheld under FOIA's Exemption One, 5 U.S.C. § 552(b)(1), Exemption Three, id. § 552(b)(3), and Exemption Seven, id. § 552(b)(7)(A).  See Olsen Decl. ¶ 12.  These provisions set forth exemptions from disclosure that protect:  records that are currently and properly classified, 5 U.S.C. § 552(b)(1);  records that are protected from disclosure under some other statute, id. § 552(b)(3); and records that are compiled for law enforcement purposes where disclosure could reasonably be expected to interfere with enforcement proceedings.  Id. . § 552(b)(7)(A).[2]

A.     **DOJ Properly Withheld Records Under Exemption One.**

The responsive Orders of the FISC withheld by OIPR are highly classified and are thus properly withheld under Exemption One.  Olsen Decl. ¶¶ 13-22.  Exemption One allows an agency to protect records that are:  (1) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy, and (2) are in fact properly classified pursuant to Executive Order.  See 5 U.S.C. § 552 (b)(1).  Exemption One thus "establishes a specific exemption for defense and foreign policy secrets, and delegates to the President the power to establish the scope of that exemption by executive order."  Military Audit Project, 656 F.2d at 737.

Section 1.2(a)(4) of Executive Order 12958, as amended, states that an agency may classify information that fits into one or more of the Executive Order's categories for classification when the appropriate classification authority "determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security."  Executive Order 12958, 60 Fed. Reg. 19825 (Apr. 17, 1995), as amended by Executive Order 13292, 68 Fed. Reg. 15315

---

[2]  The documents withheld here are subject to overlapping claims of exemption, and DOJ's claims to the applicable exemptions are asserted herein in the alternative.  This Court need only find any one exemption applicable in order to grant summary judgment to DOJ.  See Fund for Constitutional Gov't v. Nat'l Archives & Records Serv., 656 F.2d 856, 864 n.19 (D.C. Cir. 1981).

(Mar. 25, 2003).[3]  In order to properly invoke Exemption One, the agency must provide "detailed and specific" information demonstrating both "why the material has been kept secret and why such secrecy is allowed by the terms of an existing executive order."  ACLU, 265 F. Supp. 2d at 27.

An agency's burden in this regard is "not especially onerous."  ACLU, 265 F. Supp. 2d at 29. The issue for the Court is whether "on the whole record, the Agency's judgment objectively survives the test of reasonableness, good faith, specificity and plausibility in the field of foreign intelligence in which [the agency] is expert and has been given by Congress a special role."  Gardels v. Cent. Intelligence Agency, 689 F.2d 1100, 1105 (D.C. Cir. 1982).  Although the agency bears the burden of proving its claim for exemption, see 5 U.S.C. § 552(a)(4)(B), agencies have "unique insights" into the adverse effects that might result from public disclosure of classified information and, thus, courts must accord "substantial weight" to an agency's affidavits justifying classification.  Miller v. Casey, 730 F.2d 773, 776 (D.C. Cir. 1984); Military Audit Project, 656 F.2d at 738.

Under these standards, to carry its burden of demonstrating the propriety of its decisions supporting its Exemption One position, DOJ must simply demonstrate a "logical connection between the information and the claimed exemption . . . ."  ACLU, 265 F. Supp. 2d at 29-30.  In reviewing the claims made by DOJ, the Court "is not to conduct a detailed inquiry to decide whether it agrees with the agency's opinions . . . ."  Halperin, 629 F.2d at 148; see Weissman v. Cent. Intelligence Agency, 565 F.2d 692, 697 (D.C. Cir. 1997) (recognizing that "[f]ew judges have the skill or experience to weigh the repercussions of disclosure of intelligence information").  To do so would violate the principle of according substantial weight to the expert opinion of the agency.  See Miller, 730 F.2d at 776; Military Audit Project, 656 F.2d at 738.  Instead, the Court must "take seriously the government's predictions about the security implications of releasing particular information to the

_____

[3]  All citations herein to Executive Order 12958 are to the Order as amended by Executive Order 13292.  A copy of the amended Executive Order is attached as Ex. B hereto.

public . . . ," <u>ACLU</u>, 265 F. Supp. 2d at 28, and "recognize that the executive branch departments responsible for national security and national defense have unique insights and special expertise concerning the kind of disclosures that may be harmful." <u>Id.</u> at 27 (citing <u>Krikorian v. Dept. of State</u>, 984 F.2d 461, 464 (D.C. Cir. 1993); <u>Salisbury v. United States</u>, 690 F.2d 966, 970 (D.C. Cir. 1982); and <u>Military Audit Project</u>, 656 F.2d at 738).

The materials withheld here consist of orders signed by the FISC authorizing the collection of foreign intelligence, and the procedures that regulate the acquisition, retention and dissemination of information about United States persons, including persons who are not targets of FISA collection. <u>See</u> Olsen Decl. ¶ 11.  The orders authorize the United States Government to conduct foreign surveillance, and specifically, to target for collection international communications into and out of the United States where there is probable cause to believe that one of the communicants is a member or agent of al Qaeda or an associated terrorist organization.  <u>Id.</u> ¶ 17 & Ex. A.  These documents, accordingly, directly implicate the collection of foreign intelligence critical to the ongoing Global War Against Terror.

As described in the Declaration of Mr. Olsen, the documents withheld by OIPR are currently and properly classified because they fall squarely into one of the categories of information identified by Executive Order as subject to classification in the interests of national security.  <u>See</u> Executive Order 12958, as amended; Olsen Decl. ¶ 14.  Specifically, Section 1.4(c) of Executive Order 12958, as amended, identifies "intelligence activities (including special activities), intelligence sources or methods, or cryptology," as among the subjects properly subject to classification.  The authority to protect intelligence sources and methods from disclosure is rooted in the "practical necessities of modern intelligence gathering," <u>Fitzgibbon v. Cent. Intelligence Agency</u>, 911 F.2d 755, 761 (D.C. Cir. 1990), and has been described by the Supreme Court as both "sweeping," <u>Sims</u>, 471 U.S. at 169, and "wide-ranging." <u>Snepp v. United States</u>, 444 U.S. 507, 509 (1980).  Sources and methods

constitute "the heart of all intelligence operations," <u>Sims</u>, 471 U.S. at 167, and "[i]t is the responsibility of the [intelligence community], not that of the judiciary to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the . . . intelligence-gathering process." <u>Id.</u> at 180.

As Mr. Olsen explains, the unauthorized disclosure of information relating to intelligence collection activities would cause serious or exceptionally grave damage to the national security of the United States: "to disclose the methods, means, sources, or targets of intelligence collection, or the procedures relating to the acquisition, retention, or dissemination of intelligence information, is to provide terrorists with a roadmap for how to avoid surveillance or to manipulate it. The resulting loss of accurate intelligence would have devastating consequences for the national security of the United States." Olsen Decl. ¶ 18. This is because "[h]ostile intelligence services and international terrorist groups taking aim at the United States are sensitive to information that points to certain categories of targets or certain types of methods or means of surveillance," and use any such information to "conduct their counterintelligence or international terrorist activities against us more securely." <u>Id.</u> ¶ 19.

Thus, as Mr. Olsen explains, "to disclose that . . . certain targets have been identified for surveillance or not, or that certain surveillance methods or procedures are authorized for use or not, would allow terrorists intent on causing harm to the United States to identify where U.S. intelligence efforts were focused and to identify 'safe harbors' where communications about their terrorist plans could be conducted in relative safety." Olson Decl. ¶ 16. Similarly,

> the disclosure of any information that would tend to confirm or deny whether any individual has been the target of communications surveillance or that any individual has been identified as a source of foreign intelligence would disclose specifically, and in a more general sense, who is and is not being targeted   thus, compromising that collection and providing our adversaries clues about those who may or may not be using secure communications. Confirming a target's identity would immediately disrupt the flow of accurate intelligence because the target would undoubtedly take

steps to evade detection and manipulate the information received. Denying that any particular individual is targeted may alert our adversaries about potential gaps in our surveillance.

Id. ¶ 20. As Mr. Olsen concludes, exposure of "information concerning the methods or means of surveillance or whether someone has been targeted or subject to intelligence collection" would result in the "exposure of intelligence information, causing serious or exceptionally grave harm to the national security of the United States." Id. ¶ 21.

These concerns clearly support the high level of classification assigned to the withheld responsive documents. See Exec. Order 12958, as amended, § 1.4(c); Olsen Decl. ¶ 14 (explaining that the responsive materials are classified at the SECRET or TOP SECRET level, and that, in addition, they contain information that has been designated as "Sensitive Compartmented Information" or "SCI");[4] Marerra v. U.S. Dept. of Justice, 622 F. Supp. 51, 53-54 (D.D.C. 1985) (Hogan, J.) (finding that "OIPR properly invoked FOIA exemption 1 with respect to FISA materials" because "the materials requested by plaintiff fall within the substantive definition of classifiable material authorized to be kept secret in the interests of national security under [predecessor Executive Order], as information relating to intelligence sources or methods, and intelligence activities"); see also ACLU, 265 F. Supp. 2d at 31 ("records that indicate how [an agency] has apportioned its resources, that reveal the relative frequency with which particular surveillance tools are deployed, and that show how often U.S. persons have been targeted may undoubtedly prove useful to those who are the actual or potential target of such surveillance, and may thereby undermine the efficiency and effectiveness of such surveillance").

---

[4] Access to Sensitive Compartmented Information ("SCI") requires "clearance beyond the 'Top Secret' level." SCI is classified information that is "required to be handled exclusively within formal access control systems established by the Director of [National] Intelligence." See People for the Am. Way v. Nat'l Security Agency, 462 F. Supp. 2d 21, 26 n.2 (D.D.C. 2006) (Huvelle, J.) (citing Guillot v. Garrett, 970 F.2d 1320, 1322 n. 1 (4th Cir. 1992)).

Indeed, even apart from the danger of disclosure of the information on its own merits, courts have long recognized that sensitive information of this nature, if disclosed, when coupled with other available or unconfirmed information could provide even more dangerous insight into the United States' intelligence strategies. See Sims, 471 U.S. at 178 ("What may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context"); Ctr. for Nat'l Security Studies, 331 F.3d at 928 ("things that did not make sense to the District Judge would make all too much sense to a foreign counter-intelligence specialist who could learn much about this nation's intelligence gathering capabilities from what these documents revealed about sources and methods"); Fitzgibbon, 911 F.2d at 763 ("each individual piece of intelligence information, much like a piece of jigsaw puzzle, may aid in piecing together other bits of information even when the individual piece is not of obvious importance itself") (quoting Gardels, 689 F.2d at 1106; in turn, quoting Halperin, 629 F.2d at 150).

Congress, which recognized the necessity for strict secrecy in matters handled by the FISC, specifically provided that the FISC operates under special security measures, and that FISA orders and applications are not to be disclosed absent specific judicial findings. See Olsen Decl. ¶ 15; see also 50 U.S.C. § 1803(a)(3) ("application made and orders granted[] shall be maintained under strict security measures"); id. § 1806(f) (FISA orders, applications and related materials may be disclosed by a reviewing court in a criminal case only "where such disclosure is necessary to make an adequate determination of the legality of the surveillance"); FISA Ct. R. P. 3 (FISC must comply with § 1803(c) and Executive Order 12958 governing classification of national security information). As a result, FISC orders are routinely classified and it is the ordinary practice of OIPR to refuse to confirm or deny the existence of records pertaining to FISA activities because "it is impossible to do either without revealing classified information." See Olsen Decl. ¶ 16.

Similarly, courts also have long recognized the "exceptional nature" of FISA material and have uniformly endorsed the conclusion that disclosure of FISA material "might compromise the ability of the United States to gather foreign intelligence effectively." United States v. Rosen, 447 F. Supp. 2d 538, 546 (E.D. Va. 2006). As a result, courts routinely decline to order the disclosure of classified FISA orders and applications, even where such disclosure is sought by criminal defendants in federal criminal proceedings. See id.; see also, e.g., United States v. Dumeisi, 424 F.3d 566, 578-79 (7th Cir. 2005), cert. denied, ___ U.S. ___, 126 S. Ct. 1570 (2006); United States v. Damrah, 412 F.3d 618, 624-25 (6th Cir. 2005); United States v. Squillacote, 221 F.3d 542, 544 (4th Cir. 2000); United States v. Isa, 923 F.2d 1300, 1306 (8th Cir. 1991); United States v. Hamide, 914 F.2d 1147, 1150 (9th Cir. 1990); United States v. Badia, 827 F.2d 1458, 1464 (11th Cir. 1987); United States v. Ott, 827 F.2d 473, 476-77 (9th Cir. 1987); United States v. Duggan, 743 F.2d 59, 79 (2d Cir. 1984); United States v. Belfield, 692 F.2d 141, 147 (D.C. Cir. 1982) (all declining to compel disclosure of FISA orders and/or applications to criminal defendants or their counsel on the ground that such disclosures would harm the national security of the United States).

In this case, the Attorney General was authorized to disclose the existence of the orders of the FISC and certain general facts about them. See Olsen Decl. ¶ 17 & Ex. A. But such limited disclosures do not change the fact that the orders themselves, and their incorporated procedures, remain highly classified, as clearly contemplated by Congress when it enacted FISA, and as required by Executive Order 12958, as amended. See Public Citizen v. Dept. of State, 11 F.3d 198, 201 (D.C. Cir. 1993) ("The law of this circuit provides that an agency official does not waive FOIA Exemption 1 by publicly discussing the general subject matter of documents which are otherwise properly exempt from disclosure under the exemption"). While "[t]he national interest sometimes makes it advisable, or even imperative, to disclose [] information . . . it is the responsibility of the [Executive Branch], not that of the judiciary, to weigh the variety of complex and subtle factors in determining

whether disclosure of information may lead to an unacceptable risk of compromising the Agency's intelligence-gathering process." Sims, 471 U.S. at 180.

The government's willingness to discuss the limited information that can be revealed on the public record regarding a highly classified activity cannot be used to undermine the government's determination, grounded in its "unique insights and special expertise concerning the kinds of disclosures that may be harmful," Krikorian, 984 F.2d at 464, that certain other information concerning the activity must remain classified in the interests of national security. See Afshar v. Dept. of State, 702 F.2d 1125, 1130-31 (D.C. Cir. 1983) (rejecting plaintiffs' claims that prior disclosures required rejection of government's withholding determinations in part because court should "avoid discouraging the agency from disclosing such information about its intelligence function as it feels it can without endangering its performance of that function") (citing Salisbury, 690 F.2d at 971); accord Public Citizen, 11 F.3d at 203 (Court of Appeals is "unwilling to fashion a rule that would require an agency to release all related materials any time it elected to give the public information about a classified matter. To do so would give the Government a strong disincentive ever to provide its citizenry with briefings of any kind on sensitive topics").

In sum, the FISC orders and procedures requested by plaintiff are highly classified.[5] As Mr. Olsen comprehensively explains, public disclosure of the documents responsive to plaintiff's FOIA request would seriously compromise the collection of intelligence necessary to the conduct of the nation's counter-terrorist activities, see Olsen Decl. ¶¶ 13-22, a conclusion repeatedly endorsed with

---

[5] As Mr. Olsen explains, "[t]he highly classified nature of the material sought by EFF prevents further explanation in an unclassified setting of their content or volume, or of the serious or exceptionally grave damage that would be done to national security if the[ responsive] documents are ordered to be disclosed." Olsen Decl. ¶ 22. Courts have long endorsed the adequacy of agency justifications for FOIA withholdings that do not go so far as to disclose the very information sought to be protected by the exemption. See Vaughn v. Rosen, 484 F.2d 820, 826 (D.C. Cir. 1973) (agency justifications for applicability of FOIA exemptions need not "contain factual descriptions that if made public would compromise the secret nature of the information").

respect to similar materials by all three branches of the federal government. Classified materials of this sort are wholly exempt from disclosure under FOIA Exemption One, and DOJ's determination to withhold such materials must be upheld.

### B.    DOJ Properly Withheld Records Under Exemption Three.

The documents withheld by OIPR are also properly withheld under Exemption Three of FOIA.  Exemption Three, which is set forth at 5 U.S.C. § 552(b)(3), is intended to protect information from disclosure under FOIA that Congress has separately determined warrants special protection.  Thus, FOIA "does not apply to matters that are    . . . specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  Id.  In examining an Exemption Three claim, a court must determine, first, whether the claimed statute is a statute of exemption under FOIA, and second, whether the withheld material satisfies the criteria of the exemption statute.  See Sims, 471 U.S. at 167; Fitzgibbon, 911 F.2d at 761.

Evaluating whether documents are properly withheld under Exemption Three presents considerations "distinct and apart from the other eight exemptions."  Fitzgibbon, 911 F.2d at 761 (quoting Ass'n of Retired R.R. Workers v. U.S. R.R. Retirement Bd., 830 F.2d 331, 336 (D.C. Cir. 1987)).  When Congress has enacted statutes that particularly identify certain categories of information that are exempt from public disclosure notwithstanding the requirements of FOIA, Congress makes "manifest" its intent to require the withholding of documents falling within the terms of those statutes.  Fitzgibbon, 911 F.2d at 761; see also id. at 764 ("exemption statutes were congressionally designed to shield processes at the very core of the intelligence agencies intelligence-collection and intelligence-source evaluation").  Thus, as the Court of Appeals has explained, "'Exemption 3 differs from other FOIA exemptions in that its applicability depends less

-16-

on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage.'" Id. at 761-62 (quoting Ass'n of Retired R.R. Workers, 830 F.2d at 336, and Goland v. Cent. Intelligence Agency, 607 F.2d 339, 350 (D.C. Cir. 1978)).

Congress has specifically authorized protection of the materials sought by plaintiff's FOIA request in Section 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, 118 Stat. 3638 (Dec. 17, 2004), codified at 50 U.S.C. § 403-1(i)(1). This statute requires the Director of National Intelligence to "protect intelligence sources and methods from unauthorized disclosure." Id. It is "settled" that this statute falls within Exemption Three. Gardels, 689 F.2d at 1103 (discussing predecessor statute applicable to Central Intelligence Agency ("CIA"), which provided that "the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure"); accord Sims, 471 U.S. at 167-68, 193 (1985); see also Fitzgibbon, 911 F.2d at 761 ("There is thus no doubt that [the predecessor CIA statute] is a proper exemption statute under exemption 3"). Indeed, in the words of this Court, the "sources and methods" exemption provided to the U.S. Intelligence Community is a "near blanket FOIA exemption," and is "only a short step [from] exempting all [intelligence agency] records from FOIA." Whalen v. U.S. Marine Corps, 407 F. Supp. 2d 54, 59 n.5 (D.D.C. 2005) (Leon, J.) (quoting Minier, 88 F.3d at 801) (both discussing predecessor statute applicable to the CIA).

As Mr. Olsen describes, the documents withheld here contain information relating to "intelligence sources and methods," Olsen Decl. ¶ 25; see also id. ¶¶ 13-22 (describing the nature of the withheld material); indeed, they are orders of the Court established by Congress to specifically review methods of intelligence gathering. Disclosure of these documents, which contain information concerning the "methods, means, sources and targets of authorized surveillance," id. ¶ 18, would clearly result in the disclosure of the sort of information specifically identified in Section 102A(i)(l).

As Mr. Olsen describes, such disclosure is "not authorized."  Olsen Decl. ¶ 25.

Moreover, although, as described above, Mr. Olsen has also specifically described the multitude of harms to the national security that would result from any compelled disclosure of information contained in these documents, see Olsen Decl. ¶¶ 16-22, "[a] specific showing of potential harm to national security . . . is irrelevant to the language of [an Exemption Three statute]. Congress has already, in enacting the statute, decided that disclosure of [the specified information] is potentially harmful."  Hayden v. Nat'l Security Agency, 608 F.2d 1381, 1390 (D.C. Cir. 1979); accord People for the American Way Found. v. Nat'l Security Agency, 462 F. Supp. 2d 21, 30 (D.D.C. 2006) (Huvelle, J.).  It is similarly irrelevant whether information for which the protection of Exemption Three is sought is classified pursuant to Executive Order.  See Gardels, 689 F.2d at 1107 (noting that "Exemption 3 is independent of Exemption 1 and may be invoked independently" and finding that classification under Executive Order is "not a prerequisite for application of [an] Exemption 3 statute").  All that is necessary is that the information withheld "logically" falls within the categories outlined by the exempting statute.  Hayden, 608 F.2d at 1387. Mr. Olsen's declaration demonstrates that the withheld documents fully meet this test.

### C.    DOJ Properly Withheld Records Under Exemption Seven.

The documents withheld by OIPR are also properly withheld under Exemption 7(A) of FOIA. This exemption authorizes the withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  In enacting this exemption, "Congress recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations."  Ctr. for Nat'l Security Studies, 331 F.3d at 926 (quoting Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co. ("Robbins Tire"), 437 U.S. 214, 232 (1978)).

-18-

To satisfy its burden of justifying the applicability of this Exemption, DOJ need only demonstrate that (1) a law enforcement proceeding is pending <u>or</u> prospective, and (2) release of the information could reasonably be expected to cause some articulable harm to the proceeding.[6] <u>Voinche v. Fed. Bureau of Investigation</u>, 46 F. Supp. 2d 26, 31 (D.D.C. 1999) (Friedman, J.). Courts have long accepted that Congress intended the Exemption to apply whenever the government's case could be harmed by the premature release of evidence or information, <u>or</u> when disclosure could impede any necessary investigation prior to the enforcement proceeding. <u>See</u>, <u>e.g.</u>, <u>Robbins Tire</u>, 437 U.S. at 232 ("[T]he release of information in investigatory files prior to the completion of an actual, contemplated enforcement proceeding was precisely the kind of interference that Congress continued to want to protect against."). The purpose of Exemption 7(A) is to protect "investigations which focus directly on specifically alleged illegal acts . . ., acts which could, if proved, result in civil or criminal sanctions." <u>Birch v. Postal Serv.</u>, 803 F.2d 1206, 1209-11 (D.C. Cir. 1986) (quoting <u>Rural Hous. Alliance v. Dept. of Agriculture</u>, 498 F.2d 73, 81 (D.C. Cir. 1974)).

Orders issued by the FISC and the procedures which govern the acquisition, retention, and dissemination of intelligence information are protected from mandatory disclosure by Exemption 7(A). First, as a threshold matter, the documents withheld from plaintiff constitute documents compiled for law enforcement purposes. As Mr. Olsen describes, the "core mission of the

---

[6] The agency's burden in demonstrating interference with law enforcement proceedings under Exemption 7(A) has been significantly relaxed by Congress. Section 552(b)(7)(A) originally provided for the withholding of information that "<u>would</u> interfere with enforcement proceedings," but the Freedom of Information Reform Act of 1986 amended that language and replaced it with the phrase "<u>could reasonably be expected to</u> interfere with" enforcement proceedings. <u>See</u> Pub. L. No. 99-570, § 1802, 100 Stat. 3207, 3207-48 (emphasis added). Courts have repeatedly recognized that this change in the statutory language substantially broadens the scope of the exemption. <u>See</u>, <u>e.g.</u>, <u>Manna v. DOJ</u>, 51 F.3d 1158, 1164 n.5 (3d Cir. 1995) (purpose of 1986 amendment was "to relax significantly the standard for demonstrating interference with enforcement proceedings"); <u>Alyeska Pipeline Serv. Co. v. U.S. Environmental Protection Agency</u>, 856 F.2d 309, 311 n.18 (D.C. Cir. 1988) (holding that district court's improper reliance on pre-amendment version of Exemption 7(A) "required EPA to meet a higher standard than FOIA now demands").

Department of Justice is to enforce the laws of the United States" and OIPR, specifically, "is responsible for combating terrorism and other threats to national security through the effective use of FISA." Olsen Decl. ¶ 27. The collection of intelligence "is part of a concentrated effort to detect and prevent suspected illegal acts of terrorism," id., and there can be no question that applications for FISA orders and the orders issued by the FISA court are compiled by OIPR for law enforcement purposes.[7] Indeed, as the Court of Appeals has recognized, the "DOJ is an agency 'specializ[ing] in law enforcement,'" and thus, its "claim of a law enforcement purpose is entitled to deference." Ctr. for Nat'l Security Studies, 331 F.3d at 926 (citations omitted).

Second, disclosure of the responsive documents would interfere with pending or prospective law enforcement proceedings. As Mr. Olsen describes, "the Department of Justice is currently investigating and/or prosecuting various terrorism-related cases nation-wide." Olsen Decl. ¶ 28; see also Ctr. for Nat'l Security Studies, 331 F.3d at 921 ("In response to the terrorist attacks of September 11, 2001, President George W. Bush ordered a worldwide investigation into those attacks and into 'threats, conspiracies, and attempts to perpetrate terrorist acts against United States citizens and interests.' . . . The investigation continues today"). As this court has recently recognized, "the government's ongoing September 11 investigation" constitutes a pending or prospective law enforcement proceeding within the terms of Exemption 7(A). See Owens v. U.S. Dept. of Justice, 2007 WL 778980 (D.D.C. 2007) (Bates, J.) (citing Ctr. for Nat'l Security Studies, 331 F.3d at 926).

Because FISA collection can lawfully facilitate those ongoing investigative and prosecutorial efforts, "public disclosure of the requested documents would both hinder and impair the

_____

[7] In order to seek an order under FISA, the official certifying the application must state, among other things, that "a significant purpose" of the FISA collection is to obtain foreign intelligence information. See, e.g., 50 U.S.C. § 1804(a)(7)(B). But there is no prohibition on using material collected pursuant to a FISA order in subsequent criminal proceedings subject to certain procedural requirements. See id. § 1806(b); see generally In re Sealed Case, 310 F.3d 717 (Foreign Int. Surv. Ct. Rev. 2002).

government's ability to investigate or litigate these cases."  Olsen Decl. ¶ 28.  Specifically,

"disclosure of information pertaining to the scope and focus of intelligence collection activity would

. . . prematurely identify[] potential targets or reveal[] the nature of the government's interest in

certain individuals or groups.  Such information would allow terrorists to better evade ongoing

investigations and more easily formulate or revise counter measures."  Id. ¶ 29.  Similarly,

"disclosure of details concerning the manner in which surveillance is conducted or the procedures

governing the Government's collection of intelligence would provide a 'blue print' of the

Department's law enforcement activities, and allow terrorists to attempt to evade justice or

manipulate the information collected by the Government." Id. ¶ 30.[8] Mr. Olsen's conclusions in this

regard are entitled to judicial deference.  See Ctr. for Nat'l Security Studies, 331 F.3d at 927-28.

    The sorts of impediments to ongoing law enforcement efforts identified by Mr. Olsen are

exactly the sort of harms intended to be avoided by FOIA's Exemption 7(A).  See, e.g., Ctr . for

Nat'l Security Studies, 331 F.3d at 928 (upholding DOJ's claim of exemption under 5 U.S.C.

§ 552(b)(7)(a) where the "records could reveal much about the focus and scope of the [agency's]

investigation, and thus are precisely the sort of information exemption 7(A) allows an agency to keep

secret") (quoting Swan v. Sec. & Exchange Comm'n, 96 F.3d 498, 500 (D.C. Cir. 1996));

see also Mapother v. Dept. of Justice, 3 F.3d 1533, 1542, 1543 (D.C. Cir. 1993); (holding that

---

    [8] It is well-established that the applicability of Exemption 7(A) may be demonstrated generically, based on the category of records involved, rather than on a document-by-document basis. See Robbins Tire, 437 U.S. at 236; see also Solar Sources, Inc. v. United States, 142 F.3d 1033, 1037 (7th Cir. 1998) (agency "need not establish that release of a particular document would actually interfere with an enforcement proceeding," but rather that "with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally interfere with enforcement proceedings.") (first emphasis in original and subsequent emphases added) (quoting Robbins Tire, 437 U.S. at 236).  Release of orders issued by the FISA court authorizing electronic surveillance in the course of any current intelligence collection activity will invariably "generally interfere with enforcement proceedings" where, like here, that activity is directed at detecting and preventing illegal acts of terrorism.

release of index of documents in active investigative file would "provide a virtual roadmap through

the . . . evidence"); <u>Wright v. OSHA</u>, 822 F.2d 642, 647 (7th Cir. 1987) (finding that disclosure

would tip off target as to scope, direction, and limits of investigation); <u>Moorefield v. U.S. Secret</u>

<u>Serv.</u>, 611 F.2d 1021, 1026 (5th Cir. 1980) (finding that disclosure would enable requester "to elude

the scrutiny of the Service with potentially disastrous results").

Under the well-established standards applicable under FOIA's Exemption 7(A), OIPR's

withholding of the responsive documents must be upheld.

## CONCLUSION

For the reasons stated herein and in the supporting declaration, DOJ has acted properly in

responding to the plaintiff's FOIA request.  As a result, the Department is entitled to summary

judgment as a matter of law pursuant to Federal Rule of Civil Procedure 56.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General, Civil Division

JEFFREY A. TAYLOR
United States Attorney

JOSEPH H. HUNT
Director, Federal Programs Branch

JOHN R. TYLER (DC# 297713)
Senior Trial Counsel
Federal Program Branch

_____/s/ Rupa Bhattacharyya_____
RUPA BHATTACHARYYA (VA# 38877)
Senior Trial Counsel
Federal Programs Branch, Civil Division
United States Department of Justice
P.O. Box 883, 20 Massachusetts Ave., N.W.
Washington, D.C.  20044
Tel: (202) 514-3146;  Fax: (202) 318-7593
Dated: May 11, 2007.                Email: rupa.bhattacharyya@usdoj.gov

-22-

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION,    ) | |
|                       ) | |
|      Plaintiff,            ) | Civil Action No. 07-00403 (TFH) |
|                       ) | |
|          v.             ) | |
|                       ) | |
| U.S. DEPARTMENT OF JUSTICE,     ) | |
|                       ) | |
|      Defendant.          ) | |

**DECLARATION OF MATTHEW G. OLSEN**

I, Matthew G. Olsen, do hereby state and declare as follows:

1.    I am the Deputy Assistant Attorney General, National Security Division of the United States Department of Justice ("DOJ" or "Department") and oversee the operations of the Office of Intelligence Policy and Review ("OIPR"). In this capacity, I manage all operations within OIPR, including Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, administration.

2.    I make the statements herein on the basis of personal knowledge, as well as on information acquired by me in the course of performing my official duties and on the advice of counsel.

3.    OIPR provides legal advice to the Attorney General and the United States intelligence agencies on questions of law and procedure that relate to United States intelligence activities. OIPR performs review functions of certain intelligence activities, and prepares and presents applications for electronic surveillance, physical search, the installation and use of pen registers and trap and trace devices, and access to certain tangible things, to the United States Foreign Intelligence Surveillance Court ("FISC").

## ELECTRONIC FRONTIER FOUNDATION'S FOIA REQUEST

4.      On January 17, 2007, the Attorney General, by letter to Senate Judiciary Chairman Patrick Leahy and Ranking Senate Judiciary Member Arlen Specter, announced that on January 10, 2007, a judge of the FISC had issued orders authorizing the Government to target for foreign intelligence collection international communications into or out of the United States where there is probable cause to believe that one of the communicants is a member or agent of al Qaeda or an associated terrorist organization. A copy of this letter is attached as Exhibit A.

5.      By letter dated January 23, 2007, the Electronic Frontier Foundation ("EFF") requested access under FOIA to "all Foreign Intelligence Surveillance Court ('FISC') orders referenced by the Attorney General in his letter to Sens. Leahy and Specter, and all FISC rules and guidelines associated with such orders and/or referenced by Mr. [Tony] Snow in the January 17 press briefing." A copy of EFF's FOIA request is attached as Exhibit B.

6.      OIPR received EFF's request on January 23, 2007, and acknowledged this receipt by letter dated January 26, 2007. See Exhibit C.   The EFF also requested expedited processing of its FOIA request, and DOJ granted the request for expedited treatment. Accordingly, OIPR reviewed EFF's request ahead of others routinely processed on a first-in, first-out basis.

## OIPR'S SEARCH AND RESPONSE

7.      After receiving EFF's FOIA request, OIPR initiated a search for responsive documents. OIPR maintains three general categories of records: operations records relating to proceedings before the FISC under the Foreign Intelligence Surveillance Act ("FISA"), including applications for authority to conduct electronic surveillance, physical searches, and other operational matters; litigation records; and policy records, including congressional inquiries and reports. Because EFF's FOIA request was relatively narrow and sought documents that had been recently

referenced in public statements by high-level administration officials, those persons within OIPR with responsibilities for the matters related to EFF's request were asked to locate the responsive documents.

8.      As a result of my duties, I am familiar with the documents sought by EFF's request, and am confident that OIPR's search retrieved all documents that are responsive to this request.

9.      On March 9, 2007, OIPR responded to EFF's FOIA request and advised that it had located two responsive documents. See Exhibit D. In doing so, OIPR intended to indicate that it had located two documents or categories of documents that were responsive to EFF's request. The number and volume of the FISC orders referenced in the Attorney General's January 17, 2007, letter are classified and cannot be further discussed in an unclassified setting. See infra ¶ 22.

10.     OIPR's March 9, 2007, letter also advised EFF that the responsive documents were being withheld in their entirety pursuant to FOIA's exemption provisions. 5 U.S.C. § 552(b).

## EXPLANATION OF WITHHELD MATERIAL

11.     The material withheld by OIPR in response to EFF's FOIA request consists of orders signed by the FISC and procedures that regulate the acquisition, retention and dissemination of information about United States persons, including persons who are not the targets of FISA collection.

12.     The purpose of this declaration is to describe the justifications for withholding the responsive material under FOIA. Specifically, the material responsive to EFF's request is properly withheld under Exemption 1, 5 U.S.C. § 552(b)(1), Exemption 3, 5 U.S.C. § 552(b)(3), and Exemption 7(A), 5 U.S.C. § 552(b)(7)(A). These provisions set forth exemptions from disclosure which protect the following: records that are currently and properly classified, 5 U.S.C. § 552(b)(1); records that are protected from disclosure under some other statute, 5 U.S.C. § 552(b)(3); and

records that are compiled for law enforcement purposes where disclosure could reasonably be expected to interfere with enforcement proceedings. 5 U.S.C. § 552(b)(7)(A).

### Exemption 1

13.    Exemption 1 of the FOIA protects from disclosure national security information that has been properly classified in accordance with the substantive and procedural requirements of an executive order. Inherent in Congress' enactment of Exemption 1 is a balancing of interests and a decision to elevate national security concerns over the public's interest in certain government information. Section 1.4 of Executive Order 12958, as amended, which governs here, lists the categories of information that must be considered for classification. Paragraph (c) of Section 1.4 identifies "intelligence activities (including special activities), intelligence sources or methods, or cryptology."

14.    The responsive material is classified under paragraph (c) of Section 1.4 of Executive Order 12958, as amended. At my request, a person with original classification authority within OIPR reviewed the documents and confirmed their current and proper classification. Specifically, these materials are classified at the SECRET or TOP SECRET level, which means that their unauthorized disclosure could reasonably be expected to cause serious damage or exceptionally grave damage, respectively, to the national security of the United States. See Executive Order 12958, as amended. In addition, some of this material is designated as "Sensitive Compartmented Information" or "SCI," which means that it is subject to special access and handling requirements necessary to maintain its strict confidentiality and prevent its unauthorized disclosure.

15.    The FISC conducts its proceedings under rigorous security procedures. In particular, FISA specifies that the record of proceedings before the FISC "including applications made and orders granted, shall be maintained under security measures established by the Chief Justice in

-4-

consultation with the Attorney General and the Director of [National] Intelligence." 50 U.S.C. § 1803(c). It further provides that persons rendering assistance under the Act do so "in such a manner as will protect its secrecy." 50 U.S.C. § 1803(a)(3); see also FISA Ct. R. P. 3 (FISC must comply with § 1803(c) and Executive Order 12958 governing classification of national security information). In enacting FISA, Congress recognized that proceedings before the FISC were to be conducted in the strictest secrecy if the confidentiality of United States intelligence sources and methods was to be protected.

16.    Ordinarily, OIPR's practice is to refuse to confirm or deny the existence of records pertaining to FISA operations because it is impossible to do either without revealing classified information. To disclose that orders either exist or do not exist, or that certain targets have been identified for surveillance or not, or that certain surveillance methods or procedures are authorized or not, would allow terrorists intent on causing harm to the United States to determine where U.S. intelligence efforts were focused and to identify "safe harbors" where communications about their plans could be conducted in relative safety.

17.    In this case, the Attorney General was authorized to make public several general facts. See Exhibit A. Those included that new FISC orders had been issued, and that the orders authorized the Government to target for collection international communications into or out of the United States where there is probable cause to believe that one of the communicants is a member or agent of al Qaeda or an associated terrorist organization. Id.

18.    The number and content of these orders, including information on methods, means, sources, and targets of authorized surveillance, and their accompanying procedures remains highly classified. Unauthorized disclosure of these documents would provide material assistance to those who would seek to penetrate, detect, prevent, or damage the intelligence efforts of the United States,

including efforts to counter international terrorism. Indeed, to disclose the methods, means, sources, or targets of intelligence collection, or the procedures relating to the acquisition, retention, or dissemination of intelligence information, is to provide terrorists with a roadmap for how to avoid surveillance or to manipulate it. The resulting loss of accurate intelligence would have devastating consequences for the national security of the United States.

19.     Moreover, each technique authorized under FISA is a flexible and covert tool employed by the Government against the changing tradecraft of national security threats.  Hostile intelligence services and international terrorist groups taking aim at the United States are sensitive to information that points to certain categories of targets or certain types of methods or means of surveillance. The classified documents withheld under Exemption 1 would, if publicly disclosed, cause serious or exceptionally grave damage to our national security by giving our adversaries a window into U.S. intelligence collection activities and, thus, enabling them to conduct their counterintelligence or international terrorist activities against us more securely.

20.     Similarly, the disclosure of any information that would tend to confirm or deny whether any individual has been the target of communications surveillance or that any individual has been identified as a source of foreign intelligence would disclose specifically, and in a more general sense, who is and is not being targeted – thus, compromising that collection and providing our adversaries clues about those who may or may not be using secure communications. Confirming a target's identity would immediately disrupt the flow of accurate intelligence because the target would undoubtedly take steps to evade detection and manipulate the information received. Denying that any particular individual is targeted may alert our adversaries about potential gaps in our surveillance.

21.     The only viable way to protect the integrity of intelligence collection, accordingly,

is to protect from disclosure all information concerning the methods or means of surveillance or whether someone has been targeted or subject to intelligence collection, including the materials identified by OIPR as responsive to EFF's FOIA request. To do otherwise would result in the frequent, routine exposure of intelligence information, causing serious or exceptionally grave damage to the national security of the United States.

22.    The highly classified nature of the materials sought by EFF prevents further explanation in an unclassified setting of their content or volume, or of the serious or exceptionally grave damage that would be done to national security if these documents are ordered to be disclosed. Should further information be required, it can be presented to the Court in a classified declaration intended for the Court's in camera, ex parte review.

### Exemption 3

23.    Exemption 3 of the FOIA provides that FOIA does not require the disclosure of information that is specifically exempted from disclosure by statute, as long as the relevant statute requiring the information to be withheld from the public leaves no discretion on the issue, or establishes particular criteria for withholding or refers to particular types of matters that should be withheld. 5 U.S.C. § 552(b)(3).

24.    Applicable to this case is Section 102A(i)(l) of the Intelligence Reform and Terrorist Prevention Act of 2004, 50 U.S.C. § 403-1(i)(l), which directs that the Director of National Intelligence "shall protect intelligence sources and methods from unauthorized disclosure."

25.    In the course of preparing this declaration, DOJ has consulted with the Office of the Director of National Intelligence, which has confirmed that disclosure of the information responsive to EFF's request would divulge "intelligence sources and methods," and that such disclosure is not authorized under Section 102A(i)(l).

### Exemption 7(A)

26.    Exemption 7(A) authorizes the withholding of materials compiled for law enforcement purposes if their disclosure could reasonably be expected to interfere with law enforcement proceedings.

27.    The withheld documents satisfy the threshold requirement of 5 U.S.C. § 552(b)(7) because they are records compiled for law enforcement purposes.  The core mission of the Department of Justice is to enforce the laws of the United States and to investigate, prosecute and defend all suits in which the United States is a party.  The Office of Intelligence Policy & Review, National Security Division, is responsible for combating terrorism and other threats to national security through the effective use of FISA.  This statutory authority enables the Government to obtain vital intelligence to detect and prevent terrorist attacks against the United States.  Accordingly, there can be no question that the collection of intelligence is part of a concentrated effort to detect and prevent suspected illegal acts of terrorism.  OIPR not only has the statutory authority to compile these records, but to compile these records in the course of fulfilling its law enforcement functions.

28.    Moreover, disclosure of the records could reasonably be expected to interfere with law enforcement proceedings.  See 5 U.S.C. § 552(b)(7)(A).  The Department of Justice is currently investigating and/or prosecuting various terrorism-related cases nation-wide.  To the extent that FISA collection activity can lawfully facilitate these investigative and prosecutorial efforts, public disclosure of the requested documents would both hinder and impair the government's ability to investigate or litigate these cases.

29.    For example, the disclosure of information pertaining to the scope and focus of intelligence collection activity would defeat the important interests protected by Exemption 7(A) by

prematurely identifying potential targets or revealing the nature of the government's interest in certain individuals or groups. Such information would allow terrorists to better evade ongoing investigations and more easily formulate or revise counter measures.

30.    Similarly, disclosure of details concerning the manner in which surveillance is conducted or the procedures governing the Government's collection of intelligence would provide a "blue print" of the Department's law enforcement activities, and allow terrorists to attempt to evade justice or manipulate the information collected by the Government. Disclosure of such a "blue print" of OIPR's intelligence activities would allow adversaries to use the information to make reasonable predictions about the future course of counterintelligence activities, and to take steps to undermine pending and prospective counter-terrorism investigations.

31.    Thus, the release of the responsive documents would seriously undermine OIPR's effectiveness in discharging its statutorily mandated duties and could result in the very harms to law enforcement proceedings that Exemption 7(A) is designed to protect.

I declare under penalty of perjury that the foregoing is true and correct.

_Matthew G. Olsen_
Matthew G. Olsen
Deputy Assistant Attorney General
National Security Division

Executed on this _11th_ day of May, 2007.

# EXHIBIT A



# The Attorney General
Washington, D.C.

January 17, 2007

The Honorable Patrick Leahy
Chairman
Committee on the Judiciary
United States Senate
Washington, D.C. 20510

The Honorable Arlen Specter
Ranking Minority Member
Committee of the Judiciary
United States Senate
Washington, D.C. 20510

Dear Chairman Leahy and Senator Specter:

I am writing to inform you that on January 10, 2007, a Judge of the Foreign Intelligence Surveillance Court issued orders authorizing the Government to target for collection international communications into or out of the United States where there is probable cause to believe that one of the communicants is a member or agent of al Qaeda or an associated terrorist organization. As a result of these orders, any electronic surveillance that was occurring as part of the Terrorist Surveillance Program will now be conducted subject to the approval of the Foreign Intelligence Surveillance Court.

In the spring of 2005—well before the first press account disclosing the existence of the Terrorist Surveillance Program—the Administration began exploring options for seeking such FISA Court approval. Any court authorization had to ensure that the Intelligence Community would have the speed and agility necessary to protect the Nation from al Qaeda—the very speed and agility that was offered by the Terrorist Surveillance Program. These orders are innovative, they are complex, and it took considerable time and work for the Government to develop the approach that was proposed to the Court and for the Judge on the FISC to consider and approve these orders.

The President is committed to using all lawful tools to protect our Nation from the terrorist threat, including making maximum use of the authorities provided by FISA and taking full advantage of developments in the law. Although, as we have previously explained, the Terrorist Surveillance Program fully complies with the law, the orders the Government has obtained will allow the necessary speed and agility while providing substantial advantages. Accordingly, under these circumstances, the President has

Letter to Chairman Leahy and Senator Specter
January 17, 2007
Page 2

determined not to reauthorize the Terrorist Surveillance Program when the current authorization expires.

The Intelligence Committees have been briefed on the highly classified details of these orders. In addition, I have directed Steve Bradbury, Acting Assistant Attorney General for the Office of Legal Counsel, and Ken Wainstein, Assistant Attorney General for National Security, to provide a classified briefing to you on the details of these orders.

Sincerely,

Alberto R. Gonzales
Attorney General

cc:     The Honorable John D. Rockefeller, IV
        The Honorable Christopher Bond
        The Honorable Sylvester Reyes
        The Honorable Peter Hoekstra
        The Honorable John Conyers, Jr.
        The Honorable Lamar S. Smith

# EXHIBIT B


**Electronic Frontier Foundation**
Protecting Rights and Promoting Freedom on the Electronic Frontier

January 23, 2007

**BY FACSIMILE -- (202) 305-4211**

GayLa D. Sessoms, FOIA Coordinator
Office of Intelligence Policy and Review
Department of Justice
Room 6150
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

### Re: FOIA Request & Request for Expedited Processing

Dear Ms. Sessoms:

This letter constitutes a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. It is submitted on behalf of the Electronic Frontier Foundation ("EFF") and Tash Hepting, Gregory Hicks, Carolyn Jewel, and Erik Knutzen, the named plaintiffs in *Hepting v. AT&T Corp.*, No. 3:06-cv-00672-VRW (N.D. Cal. filed Jan. 30, 2006), a class action lawsuit currently pending before the U.S. District Court for the Northern District of California.

In a letter to Sens. Patrick Leahy and Arlen Specter dated January 17, 2007, the Attorney General wrote, *inter alia,*

> I am writing to inform you that on January 10, 2007, a Judge of the Foreign Intelligence Surveillance Court issued orders authorizing the Government to target for collection international communications into or out of the United States where there is probable cause to believe that one of the communicants is a member or agent of al Qaeda or an associated terrorist organization. As a result of these orders, any electronic surveillance that was occurring as part of the Terrorist Surveillance Program will now be conducted subject to approval of the Foreign Intelligence Surveillance Court.

At a press briefing on January 17, 2007, White House Press Secretary Tony Snow discussed the orders described in the Attorney General's letter. Mr. Snow said, *inter alia,* that "[t]he FISA Court has published the rules under which such [surveillance] activities may be conducted," that "the Foreign Intelligence Surveillance Court has put together its guidelines and its rules [governing the conduct of such surveillance]," and that the Administration's electronic surveillance activities will "continue[] under the rules that have been laid out by the court." Press Briefing by Tony Snow, Jan. 17, 2007 (http://www.whitehouse.gov/news/releases/2007/01/20070117-5.html).

On behalf of EFF and the *Hepting* plaintiffs, we request copies of all Foreign Intelligence Surveillance Court (FISC) orders referenced by the Attorney General in this letter to Sens. Leahy and Specter, and all FISC rules and guidelines associated with such orders and/or referenced by Mr. Snow in the January 17 press briefing.

**Request for Expedited Processing**

Pursuant to 28 CFR § 16.5(d)(iii), we request expedited processing of this FOIA request because any delay in disclosure of the requested material will result in "[t]he loss of substantial due process rights." In *Hepting*, EFF is currently representing a class of AT&T customers in litigation against the company for diverting their private communications content and disclosing their private communications records to the National Security Agency ("NSA") without a search warrant, court order, or other lawful authorization, alleging violations of federal and state statutes and the First and Fourth Amendments. EFF also serves as co-chair of the plaintiffs' executive committee in a pending multidistrict litigation ("MDL") case, *In re National Security Agency Telecommunications Records Litigation*, No. M:06-cv-01791-VRW (N.D. Cal. filed Aug. 14, 2006).

The Government, which has intervened in *Hepting* and similar cases, has already indicated that it will move to have another lawsuit related to the NSA surveillance program dismissed as moot based upon assertions that the NSA program has now been authorized by the FISC. *See* Adam Liptak, *White House Shifting Tactics in Spy Cases*, New York Times, Jan. 19, 2007, *available at* http://www.nytimes.com/2007/01/19/washington/19legal.html ("The announcement about the surveillance program came two weeks before a federal appeals court in Cincinnati was to hear the first appellate argument about the lawfulness of the program. Government lawyers now say that case is moot . . ."); *see also* Letter from DOJ to U.S. Court of Appeals for the Sixth Circuit, January 17, 2007 (attached hereto) (alerting the court to the changes in the NSA program and indicating that it would shortly be briefing the court on how these new developments effect the case). The Attorney General, in a January 19 interview on the PBS NewsHour, left no doubt that the Government intends to seek the dismissal of suits seeking injunctive relief "to stop the program from going forward under the president's authority." *U.S. "No Less Safe" After Spy Policy Change, Gonzales Says*, PBS NewsHour, *transcript available at* http://www.pbs.org/newshour/bb/law/jan-june07/gonzales_01-19.html.

It is thus likely the Government will move to dismiss as moot those claims in the *Hepting* lawsuit that seek relief against future disclosures of communications and records by AT&T to the NSA, arguing that the FISC's recent actions have rendered that conduct lawful. On January 11, 2007, the Government made an *ex parte*, in camera filing with the U.S. district court in which *Hepting* and the other MDL cases are pending; the Government subsequently described its filing as "concern[ing] the Foreign Intelligence Surveillance Court orders that were publicly announced" on January 17, 2007. Notice by the United States of Attorney General's Letter to Congress (attached hereto). EFF, the *Hepting* plaintiffs, and the other MDL plaintiffs do not have access to this filing by the

Government. It is thus clear that EFF and the plaintiffs it represents in *Hepting* will suffer a "loss of substantial due process rights" if they are denied access to the FISC orders, rules and guidelines we seek through this request.

Under penalty of perjury, we hereby affirm that the foregoing is true and correct to the best of our knowledge and belief.

As the FOIA and applicable Department regulations require, we will anticipate your response to our request for expedited processing of this FOIA request within ten (10) calendar days. Should you have any questions concerning our request, please feel free to contact us at (202) 797-9009.

Thank you for your consideration.

Sincerely,

David L. Sobel
Senior Counsel

Marcia Hofmann
Staff Attorney

attachments

# EXHIBIT C



**U.S. Department of Justice**

National Security Division

---

*Washington, D.C. 20530*

JAN 26 2007

David L. Sobel
Electroic Frontier Foundation
1875 Connecticut Avenue, NW, Suite 650
Washington, DC 20009

Re: FOIA/PA # 07-020

Dear Mr. Sobel:

This is to acknowledge receipt of your letter dated January 23, 2007, requesting access to (1) "all Foreign Intelligence Surveillance Court ("FISC") orders referenced by the Attorney General in his letter to Sens. Leahy and Specter" and (2) "all FISC rules and guidelines associated with such orders and/or referenced by Mr. Snow in the January 17, 2007 press briefing." Your Freedom of Information Act request was received by this office on January 23, 2007.

Our policy is to process FOIA requests on a first-in, first-out basis. However, since you requested expedited processing of your FOIA request it is under consideration and you will be notified. If you have any questions concerning your request, feel free to contact me on (202) 353-3092. Thank you in advance for your continuing patience.

Sincerely,

Theresa Crosland
FOIA Public Liaison

# EXHIBIT D



**U.S. Department of Justice**

National Security Division

# FILE COPY

*Washington, D.C. 20530*

MAR · 9 2007

David L. Sobel
Electronic Frontier Foundation
1875 Connecticut Ave., NW
Suite 650
Washington DC,  20009

Re: FOIA/PA #07-20

Dear Mr. Sobel:

This responds to your January 23, 2007, Freedom of Information Act (FOIA) request
for access to "all Foreign Intelligence Surveillance Court ("FISC") orders referenced by the
Attorney General in his letter to Sens. Leahy and Specter, and all FISC rules and guidelines
associated with such orders and/or referenced by Mr. Snow in the January 17 press briefing."
You also requested expedited processing of your FOIA request, and we have granted your
request for expedited treatment.  Accordingly, your request was reviewed ahead of others
routinely processed on a first-in, first-out basis.

The Office of Intelligence Policy and Review (OIPR), which is now a part of the
Department's new National Security Division,  provides advice to the Attorney General and
United States intelligence agencies regarding questions of law and policy that relate to
United States intelligence activities; performs review functions of certain intelligence
activities; and prepares and presents applications for electronic surveillance and physical
search to the United States Foreign Intelligence Surveillance Court pursuant to the Foreign
Intelligence Surveillance Act.

In response to your request, this office conducted a search of its files and located two
documents that are responsive to your request.  However, these documents have been
withheld in their entirety pursuant to Exemptions 1, 5, 6, and 7(C) of the FOIA, 5 U.S.C.
552 (b)(1), (5) (b)(6), and (b)(7)(C).  Exemption 1 pertains to national security information
which is properly classified pursuant to Executive Order 12958, as amended.  The
information protected by this Exemption is currently classified because its disclosure could
reasonably be expected to cause damage to the national security.  Exemption 5 pertains to
certain inter- and intra-agency communications protected by the attorney work product and
deliberative process privileges.  Exemptions 6 and 7(C) pertain to information the release of
which would constitute a clearly unwarranted invasion of the personal privacy of third
parties.  Since the release of this properly classified information would risk damage to
national security interests by impeding the effectiveness of intelligence activities, none of the
information being withheld is appropriate for discretionary disclosure.

If you are not satisfied with this response you may administratively appeal by writing to the Director, Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, NW, Suite 11050, Washington, D.C. 20530-0001, within sixty days from the date of this letter. Both the letter and envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Matthew G. Olsen
Acting Deputy Assistant Attorney General

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ELECTRONIC FRONTIER FOUNDATION,   )
                                        )     Civil Action No. 07-00403 (TFH)
        Plaintiff,          )
                                          )
             v.                )
                                          )
DEPARTMENT OF JUSTICE,           )
                                          )
        Defendant.        )
_____)

**STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE IS NO GENUINE ISSUE**

As required by Local Rule 7.1(h), and in support of the Motion for Summary Judgment filed on behalf the Department of Justice ("DOJ" or "Department"), the Department hereby makes the following statement of material facts as to which there is no genuine issue.

1.     On January 17, 2007, the Attorney General, in a letter to Senate Judiciary Chairman Patrick Leahy, and Ranking Minority Judiciary Member Arlen Specter, announced that on January 10, 2007, the Foreign Intelligence Surveillance Court ("FISC") had issued orders authorizing the United States Government to collect foreign intelligence by targeting for collection international communications into or out of the United States where there is probable cause to believe that one of the communicants is a member or agent of al Qaeda or an associated terrorist organization. See Declaration of Matthew G. Olsen ("Olsen Decl.") ¶ 4 & Ex. A.

2.     That same day, Presidential Spokesperson Tony Snow discussed the orders in a White House press briefing.  See http://www.whitehouse.gov/news/releases/2007/01/20070117-5.html.

3.     By letter dated January 23, 2007 addressed to the Department's Office of Intelligence Policy and Review ("OIPR"), plaintiff Electronic Frontier Foundation ("EFF") sought "copies of all

Foreign Intelligence Surveillance Court ('FISC') orders referenced by the Attorney General in his letter to [Senators] Leahy and Specter, and all FISC rules and guidelines associated with such orders and/or referenced by Mr. Snow in the January 17 press briefing." Olsen Decl. ¶ 5 & Ex. B.

4.     OIPR received EFF's request on January 23, 2007, and acknowledged receipt by letter dated January 26, 2007. Olsen Decl. ¶ 6 & Ex. C.

5.     EFF also requested expedited processing of its FOIA request, and DOJ granted the request for expedited treatment. See Olsen Decl. Ex. D.

6.     Upon receiving EFF's request, OIPR initiated a search for responsive documents. Olsen Decl. ¶ 7.

7.     Because EFF's request was relatively narrow, and sought documents recently referenced in public statements by high-level government officials, responsible persons within OIPR were asked to locate the responsive documents, and did so. Olsen Decl. ¶¶ 7-8.

8.     By letter dated March 9, 2007, OIPR responded to EFF's request, advising that it had located responsive documents, but that the responsive materials was being withheld pursuant to the Exemptions provided for in FOIA. See Olsen Decl. ¶¶ 9-10 & Ex. D.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General, Civil Division

JEFFREY A. TAYLOR
United States Attorney

JOSEPH H. HUNT
Director, Federal Programs Branch

JOHN R. TYLER (DC# 297713)
Senior Trial Counsel
Federal Program Branch

_____/s/ Rupa Bhattacharyya_____
RUPA BHATTACHARYYA (VA# 38877)
Senior Trial Counsel
Federal Programs Branch, Civil Division
United States Department of Justice
P.O. Box 883, 20 Massachusetts Ave., N.W.
Washington, D.C.  20044
Tel: (202) 514-3146
Fax: (202) 318-7593
Email: rupa.bhattacharyya@usdoj.gov

Dated: May 11, 2007.