IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ELECTRONIC FRONTIER FOUNDATION,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-0403 (TFH) |
| ) | |
| **DEPARTMENT OF JUSTICE,** ) | |
| ) | |
| Defendant. ) | |
| _____) | |

### **PLAINTIFF'S MOTION FOR RECONSIDERATION**

At the conclusion of oral argument in this action on July 26, 2007, the Court indicated from the bench that it was granting the motion of defendant Department of Justice for summary judgment and denying the cross-motion of plaintiff Electronic Frontier Foundation for *in camera* inspection of the withheld agency records at issue in this case.[1]  By this motion, plaintiff apprises the Court of newly available facts relevant to the parties' motions and respectfully requests reconsideration of the Court's ruling.

### **Discussion**

Plaintiff moves for reconsideration pursuant to Fed. R. Civ. P. 59(e).[2]  Such motions are appropriately granted, *inter alia*, where "the district court finds . . . the availability of new evidence . . . .'" *Anyanwutaku v. Moore*, 151 F.3d 1053, 1057 (D. C. Cir. 1998) (quoting

---

[1]  The Court further indicated that it would issue a written memorandum disposing of the pending motions, but such memorandum has not to date been issued, nor does the Court's docket reflect its disposition of the case.

[2]  "The general rule is that a motion for reconsideration is treated as a '[Rule] 59(e) motion if filed within 10 days of entry of the challenged order and  as a Rule 60(b) motion if filed thereafter.'" *Lightfoot v. District of Columbia*, 355 F. Supp. 2d 414, 420-421 (D.D.C. 2005) (citation omitted).  While it is not clear whether an order has yet been "entered," plaintiff believes that, in light of the Court's bench ruling, the intent of Rule 59(e) is satisfied in this case.

*Firestone v. Firestone*, 76 F.3d 1205, 1208 (D. C. Cir. 1996) (*per curium*)); *see also Messina v. Krakower*, 439 F.3d 755, 758 (D.C. Cir. 2006).  While "[a] Rule 59(e) motion to reconsider is not simply an opportunity to reargue facts and theories upon which a court has already ruled," it is the procedural vehicle by which "the moving party [may] present[] new facts" that warrant reconsideration of the court's earlier ruling.  *New York v. United States*, 880 F. Supp. 37, 38-39 (D.D.C. 1995) (three-judge panel).  Plaintiff respectfully submits that such new facts are present here.

In today's edition, the *Washington Post* reports in a front-page article that "[a] federal intelligence court judge earlier this year secretly declared a key element of the Bush administration's wiretapping efforts illegal . . . ."  Carol D. Leonnig and Ellen Nakashima, *Ruling Limited Spying Efforts; Move to Amend FISA Sparked by Judge's Decision*, Washington Post, Aug. 3, 2007, at A1 (attached hereto as Exhibit A).  Significantly, the article indicates that the referenced "intelligence court" declaration of illegality is contained in the Foreign Intelligence Surveillance Court ("FISC") orders at issue in this case.  The article states as follows:

> House Minority Leader John A. Boehner (R-Ohio) disclosed elements of the court's decision in remarks Tuesday to Fox News as he was promoting the administration-backed wiretapping legislation. . . .
>
> The judge, whose name could not be learned, concluded early this year that the government had overstepped its authority in attempting to broadly surveil communications between two locations overseas that are passed through routing stations in the United States, according to two other government sources familiar with the decision. . . .
>
> "There's been a ruling, over the last four or five months, that prohibits the ability of our intelligence services and our counterintelligence people from listening in to two terrorists in other parts of the world where the communication could come through the United States," Boehner told Fox News anchor Neil Cavuto in a Tuesday interview. . . .

2

> [Rep. Boehner's spokesman Kevin] Smith said that Boehner's comments were based on a public, Jan. 17 letter to Congress by Attorney General Alberto R. Gonzales, in which the administration announced that it would allow the NSA program to be reviewed by the intelligence court. That letter said that an intelligence court judge had issued orders "authorizing the Government to target for collection into or out of the United States where there is probable cause to believe" one of the parties is a terrorist.

*Id.*[3]

These new facts are significant because plaintiff, in support of its motion for *in camera* review of the material at issue in this case, argued that "[i]t is likely that . . . the requested material . . . primarily addresses *legal issues*, as opposed to *operational details*" of the NSA surveillance program. Memorandum in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Motion for In Camera Review ("Pl. Mem.") at 12 (emphasis in original). If, as the Post article indicates, the withheld material shows that the FISC "concluded . . . that the government had overstepped its authority in attempting to broadly surveil communications between two locations overseas that are passed through routing stations in the United States," plaintiff submits that there is no logical basis for the classification of that legal analysis. Indeed, as plaintiff has noted, previous rulings of both the FISC and the Foreign Intelligence Court of Review containing legal analysis have been publicly released. Pl. Mem. at 11-12.

The newly available facts described herein warrant the Court's reconsideration of its decision to adjudicate the government's motion for summary judgment without first reviewing the withheld material *in camera*. Plaintiff respectfully asks the Court to reassess that determination in light of these new facts.

---

[3] Plaintiff's Freedom of Information Act request seeks disclosure of "copies of all Foreign Intelligence Surveillance Court ('FISC') orders referenced by the Attorney General in his [January 17, 2007] letter to Sens. Leahy and Specter." Defendant's Exhibit B (attached to the Declaration of Matthew G. Olsen).

3

Respectfully submitted,


 /s/David L. Sobel
DAVID L. SOBEL
D.C. Bar No. 360418

MARCIA HOFMANN
D.C. Bar. No. 484136

Electronic Frontier Foundation
1875 Connecticut Avenue, N.W.
Suite 650
Washington, DC 20009
(202) 797-9009

Counsel for Plaintiff

# Exhibit A

Plaintiff's Motion for Reconsideration
*Electronic Frontier Foundation v. Department of Justice*, Civ. No. 07-0403 (TFH)

washingtonpost.com

# Ruling Limited Spying Efforts
Move to Amend FISA Sparked by Judge's Decision

By Carol D. Leonnig and Ellen Nakashima
Washington Post Staff Writers
Friday, August 3, 2007; A01

A federal intelligence court judge earlier this year secretly declared a key element of the Bush administration's wiretapping efforts illegal, according to a lawmaker and government sources, providing a previously unstated rationale for fevered efforts by congressional lawmakers this week to expand the president's spying powers.

House Minority Leader John A. Boehner (R-Ohio) disclosed elements of the court's decision in remarks Tuesday to Fox News as he was promoting the administration-backed wiretapping legislation. Boehner has denied revealing classified information, but two government officials privy to the details confirmed that his remarks concerned classified information.

The judge, whose name could not be learned, concluded early this year that the government had overstepped its authority in attempting to broadly surveil communications between two locations overseas that are passed through routing stations in the United States, according to two other government sources familiar with the decision.

The decision was both a political and practical blow to the administration, which had long held that all of the National Security Agency's enhanced surveillance efforts since 2001 were legal. The administration for years had declined to subject those efforts to the jurisdiction of the Foreign Intelligence Surveillance Court, and after it finally did so in January the court ruled that the administration's legal judgment was at least partly wrong.

The practical effect has been to block the NSA's efforts to collect information from a large volume of foreign calls and e-mails that passes through U.S. communications nodes clustered around New York and California. Both Democrats and Republicans have signaled they are eager to fix that problem through amendments to the Foreign Intelligence Surveillance Act (FISA).

"There's been a ruling, over the last four or five months, that prohibits the ability of our intelligence services and our counterintelligence people from listening in to two terrorists in other parts of the world where the communication could come through the United States," Boehner told Fox News anchor Neil Cavuto in a Tuesday interview.

"This means that our intelligence agencies are missing a wide swath of potential information that could help protect the American people," he said. Boehner added that some Democrats are aware of the problems caused by the judge's restrictive ruling and the problems it has caused for the administration's surveillance of

terrorism suspects.

"The Democrats have known about this for months," Boehner said. "We have had private conversations, we have had public conversations that this needs to be fixed. And Republicans are not going to leave this week until this problem is addressed."

Commenting on Boehner's remarks, Rep. Rahm Emanuel (Ill.), the House Democratic Caucus chairman, said yesterday that "John should remember the old adage: Loose lips very much sink ships." But Kevin Smith, Boehner's spokesman, denied that the House Republican leader had disclosed classified information.

Any assertion that Boehner spilled secrets "is just plain wrong and distracts from the critical task at hand -- fixing FISA to close the serious intelligence gaps that are jeopardizing our national security," Smith said.

Smith said that Boehner's comments were based on a public, Jan. 17 letter to Congress by Attorney General Alberto R. Gonzales, in which the administration announced that it would allow the NSA program to be reviewed by the intelligence court. That letter said that an intelligence court judge had issued orders "authorizing the Government to target for collection into or out of the United States where there is probable cause to believe" one of the parties is a terrorist.

But the letter referred only to "approval" of a government surveillance request and did not refer, as Boehner did, to the court's rejection of surveillance of specific foreign communications routed through the United States. The NSA surveillance at issue is part of a broader program authorized by President Bush shortly after the Sept. 11, 2001, attacks. Director of National Intelligence Mike McConnell said this week in a public letter that the order covered "various intelligence activities" that he did not describe. "The details of the activities changed in certain respects over time," he said.

Since the existence of the warrantless wiretapping program was leaked to the public in late 2005, civil libertarians and legal experts have accused the administration of violating FISA and engaging in illegally broad data mining of telephone and e-mail records.

The effect of the judge's decision to curtail some of that surveillance was to limit the flow of information about possible terrorism suspects, according to congressional staffers briefed on the ruling. Last week, McConnell told the Center for Strategic and International Studies that the government faces "this huge backlog trying to get warrants for things that are totally foreign that are threatening to this country."

Gaining access to the foreign communications at issue would allow the NSA to tap into the huge volume of calls, faxes and e-mails that pass from one foreign country to another by way of fiber-optic connections in the United States.

"If you're calling from Germany to Japan or China, it's very possible that the call gets routed through the United States, despite the fact that there are geographically much more direct routes to Asia," said Stephan Beckert of Telegeography Inc.

That was not true when Congress passed the Foreign Intelligence Surveillance Act in 1978. The law established much stricter limits on intercepting communications involving people or facilities in the United States. If those limits apply now, for example, to calls from Pakistan to Yemen that pass through U.S. switches, the NSA could lose access to a substantial portion of global communications traffic.

Since March, the administration has quickly tried to build a case for the legislation, while concealing from the public and many in Congress a key event that appears to have driven the effort.

"It clearly shows that Congress has been playing with half a deck," said Jim Dempsey, policy director for the Center for Democracy and Technology. "The administration is asking lawmakers to vote on a very important piece of legislation based upon selective declassification of intelligence."

In April, McConnell proposed a much broader revision of FISA than what the administration is pressing Congress to approve this week. Under the new plan, the attorney general would have sole authority to authorize the warrantless surveillance of people "reasonably believed to be outside the United States" and to compel telecommunications carriers to turn over the information in real time or after it has been stored.

An unstated facet of the program is that anyone the foreigner is calling inside the United States, as long as that person is not the primary target, would also be wiretapped. On Saturday, Bush in his radio address argued more narrowly that "one of the most important ways we can gather that information is by monitoring terrorist communications." FISA, he said, "provides a critical legal foundation" in allowing the government to collect that information while protecting Americans' civil liberties.

Testifying on the Hill in May, McConnell argued that the law needed to be updated to accommodate technology's advance. "Today a single communication can transit the world, even if the two people communicating are only a few miles apart," he said, alluding to the fact that a significant volume of e-mails and phone calls are routed through the United States.

Democrats announced this week a proposal that would also expand the government's wiretapping authority but would keep it under FISA court supervision. The authority would expire in six months.

This week, McConnell spent hours on the Hill briefing lawmakers. On Tuesday, he gave about 50 senators a classified briefing making the case for the legislation. That briefing included the change in the threat environment, as well as a description of the court development, according to a government source who requested anonymity because the briefing was classified.

"He was not complaining about one judge or another," the source said. "He was saying, 'I need to collect X, but I can only collect Y and we need to change the law on that.' "

*Washington Post staff writers Dan Eggen and Barton Gellman and washingtonpost.com staff writer Paul Kane contributed to this report.*

**Post a Comment**



**View all comments** that have been posted about this article.

Your washingtonpost.com User ID, dogmeat, will be displayed with your comment.

You must be logged in to leave a comment. Log in | Register

Submit

Comments that include profanity or personal attacks or other inappropriate comments or material will be removed from the site. Additionally, entries that are unsigned or contain "signatures" by someone other than the actual author will be removed. Finally, we will take steps to block users who violate any of our posting standards, terms of use or privacy policies or any other policies governing this site. Please review the full rules governing commentaries and discussions. You are fully responsible for the content that you post.

© 2007 The Washington Post Company

**Ads by Google**

**OfficeMax School Sale**
Buy Cool School Supplies Online. Free Shipping on Orders Over $50!
Schooled07.GooglePages.com