**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ELECTRONIC FRONTIER
FOUNDATION,

        **Plaintiff,**

  **v.**

DEPARTMENT OF JUSTICE,

        **Defendant.**

Civil No. 07-00403 (TFH)

**MEMORANDUM OPINION**

Pending before the Court is the [7] Motion for Summary Judgment filed by the United States Department of Justice (the "Justice Department" or "DOJ"), which asserts that documents sought by the Electronic Frontier Foundation ("EFF") relating to orders issued by the Foreign Intelligence Surveillance Court ("FISC") are protected from disclosure by Exemptions 1, 3, and 7(A) of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2002). Mem. Of P. & A. In Supp. Of Def.'s Mot. For Summary J. 1 [hereinafter "Def.'s Mot. For Summary J. ___"]. EFF challenges the Justice Department's assertion that the documents may be withheld in their entirety on the ground that the agency failed to comply with FOIA's segregability requirement and "the withheld material strongly suggest that segregable portions of the disputed FISC material can, in fact, be disclosed without harm to national security or other cognizable interests." Pl.'s Opp'n Br. 6. EFF therefore moved for an *in camera* review of the disputed

documents "to identify those portions that must be disclosed." *Id.* For the reasons set forth below, as well as those articulated from the bench in open court during the hearing that took place on July 26, 2007, the Court will grant the Justice Department's Motion for Summary Judgment and deny EFF's Cross-Motion for *In Camera* Review.[1]

BACKGROUND

The pertinent facts, which are not in dispute,[2] show that on January 17, 2007, Attorney General Alberto Gonzales sent a letter to Senators Patrick Leahy and Arlen Specter stating that the FISC had issued orders authorizing the government to engage in electronic surveillance of international communications when there is probable cause to do so. Statement Mat. Facts ¶ 1. That same date, White House Press Secretary Tony Snow reportedly stated during a press briefing that the FISC had established rules and guidelines to govern such electronic surveillance activities. *Id.* ¶ 2. These two events prompted EFF to fax a letter to the Justice Department [3] requesting "copies of all [FISC] orders referenced by the Attorney General in his letter to Sens. Leahy and Specter, and all FISC rules and guidelines associated with such orders and/or

---

[1]    During the intervening period between the date of the hearing and the issuance of this Memorandum Opinion, EFF filed a Motion for Reconsideration. Because this Memorandum Opinion simply memorializes the Court's bench ruling issued during the hearing, it does not address the legal arguments raised in EFF's Motion for Reconsideration.

[2]    In compliance with LCvR 7.1(h) of the Local Rules of the United States District Court for the District of Columbia, the Justice Department filed a Statement Of Material Facts As To Which There Is No Genuine Issue [hereinafter "Statement Mat. Facts"] to which EFF responded by stating that it "concurs that there is no genuine issue with respect to the material facts identified therein." Pl.'s Resp. To Def.'s Statement Mat. Facts 1.

[3]    The letter was faxed to the Justice Department's Office of Intelligence Policy and Review ("OIPR"). Compl. ¶ 3.

-2-

referenced by Mr. Snow in the January 17 press briefing." *Id.* ¶ 3; Compl. ¶ 9.

Although the Justice Department acknowledged receiving EFF's FOIA request, and determined that there were documents responsive to the request, it nevertheless withheld the responsive documents on the ground that they were exempt from disclosure. Statement Mat. Facts ¶¶ 4-8. As a consequence, EFF filed this lawsuit against the Justice Department seeking to compel the "disclosure of records concerning actions taken by the Foreign Intelligence Surveillance Court that purportedly authorize surveillance activities that the Executive Branch . . . previously asserted could be conducted without such judicial authorization." Compl. ¶ 1. EFF contends that "DOJ has violated the applicable statutory time limit for the processing of FOIA requests" and "wrongfully withheld agency records." *Id.* ¶¶ 12, 14. Accordingly, EFF seeks an order mandating that the Justice Department disclose the requested documents and pay EFF's costs and reasonable attorneys fees, among other requested relief. *Id.* ¶¶ A-E.

On May 11, 2007, the Justice Department filed Defendant's Motion for Summary Judgment and argued that it properly withheld documents responsive to EFF's request pursuant to FOIA Exemptions 1, 3, and 7(A). Def.'s Mot. For Summ. J. 1-2. In support of its motion, the Justice Department attached a declaration prepared by Mathew G. Olsen, Deputy Assistant Attorney General of the National Security Division, who oversees and "manage[s] all operations within OIPR." Public Olsen Decl. ¶ 1. To state the obvious, EFF opposed the Justice Department's motion, but did so only on the ground that the Justice Department failed to conduct a segregability analysis to determine whether portions of the responsive documents could be disclosed without the risk of harms the asserted exemptions serve to avoid. Pl.'s Opp'n Br. 6.

EFF did not challenge the three exemptions claimed by the Justice Department or otherwise assert that the exemptions were inapplicable to the documents it sought; to the contrary, EFF conceded that "*some* portion of the responsive records is likely to be properly exempt from disclosure under the FOIA exemptions upon which DOJ relies." Pl.'s Opp'n Br. 6.

EFF then cross-moved for an *in camera* review of the responsive documents to determine which portions of the documents must be disclosed. The Justice Department countered EFF's motion for *in camera* review by submitting a second declaration to support its assertion that FOIA exemptions preclude disclosure. Notice Of Lodging Of Classified Ex. In Supp. Of Def.'s Opp'n To Pl.'s Mot. For *In Camera* Review And Reply In Supp. Of Def.'s Mot. For Summ. J. 1. Unlike the first declaration, however, the second declaration contained information classified pursuant to Executive Order 12958, 60 Reg. 19825 (Apr. 17, 1995), as amended by Executive Order 13292, 68 Fed. Reg. 15315 (Mar. 25, 2003), and was submitted to the Court *in camera* and *ex parte*, although a redacted version was filed in the public record.[4] Approximately three-quarters of the second declaration was designated as classified and, therefore, not privy to inspection by EFF.

---

[4] As indicated, the Justice Department ultimately filed two Olsen declarations, the first of which was filed in the public record and, for ease of reference, shall be cited as "Public Olsen Decl." The second Olsen declaration was classified and submitted *ex parte* for the Court's *in camera* review, so it shall be cited as "Classified Olsen Decl." A redacted version of the classified Olsen declaration also was filed in the public record and will be referred to accordingly.

<u>DISCUSSION</u>

I.    APPLICABLE LEGAL STANDARDS

The FOIA has been described as "a means for citizens to know 'what the Government is up to,'" *National Archives & Records Admin. v. Favish*, 541 U.S. 157, 171 (2004) (quoting *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)), and mandates that the government make documents promptly available to any person who submits a proper request for them unless the documents are subject to an exemption enumerated in the statute.[5]  5 U.S.C. §§ 552(a)(3)(A) & 552(b) (2002).  The nine exemptions available under FOIA § 552(b) "reflect the 'Congress's recognition that the release of certain information may harm legitimate governmental or private interests.'"  *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting *Summers v. DOJ*, 140 F.3d 1077, 1080 (D.C. Cir. 1998)).  The D.C. Circuit has emphasized that the "exemptions from disclosure must be construed narrowly, in such a way as to provide the maximum access consonant with the overall purpose of the Act." *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973).  Nevertheless, although the exemptions must be construed narrowly, the Supreme Court "has recognized that the statutory exemptions are intended to have meaningful reach and application."[6]  *John Doe Agency v. John Doe Corp.*,

_____

[5]    The FOIA expressly states that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A) (2002).  The statute goes on to state, however, that it does not apply to nine categories of documents.  *Id.* § 552(b).

[6]    This approach is in keeping with Congress's intent "to reach a workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy."  H. R. Rep. No. 89-1497 (1966); *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).

493 U.S. 146, 152 (1989).

In the context of FOIA litigation, "[t]he government is entitled to summary judgment if no material facts are in dispute and if it demonstrates either that withheld or redacted documents are not required to be disclosed under § 552(a) or are exempt from disclosure under § 552(b)." *Billington v. DOJ*, 233 F.3d 581, 583-84 (D.C. Cir. 2000). The government bears the burden of proving that requested documents are, in fact, subject to asserted FOIA exemptions. 5 U.S.C. § 552(a)(4)(B) (2002). *Accord Assassination Archives & Research Ctr.*, 334 F.3d at 57 ("If an agency invokes an exemption, it bears the burden of establishing the applicability of the claimed exemption."); *Vaughn*, 484 F.2d at 823 (stating that "when the Government declines to disclose a document the burden is upon the agency to prove *de novo* in trial court that the information sought fits under one of the exemptions to the FOIA"). It is the Court's responsibility to "conduct de novo review of the applicability of the particular exemptions cited by the agency to the withheld matters." *Allen v. CIA*, 636 F.2d 1287, 1291 (D.C. Cir. 1980). Indeed, the FOIA expressly states:

> On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. *In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action.*

5 U.S.C. § 552(a)(4)(B) (2002) (emphasis added). In addition, when FOIA litigation involves classified documents, as is the case here, the D.C. Circuit has dictated that the following

-6-

standards apply:

(1)    The trial court must make a De novo review of the agency's classification decision, with the burden on the agency to justify nondisclosure.

(2)    In conducting this review, the court is to give "substantial weight" to affidavits from the agency.

(3)    The court is to require the agency to create as full a public record as possible, concerning the nature of the documents and the justification for nondisclosure.

(4)    If step (3) does not create a sufficient basis for making a decision, the court may accept classified affidavits In camera, or it may inspect the documents In camera.  This step is at the court's discretion . . . .

(5)    The court should require release of reasonably segregable parts of documents that do not fall within FOIA exemptions.

*Hayden v. NSA/Central Sec. Serv.*, 608 F.2d 1381, 1384 (D.C. Cir. 1979) (formatting added).

II.    WHETHER THE COURT MAY CONSIDER THE JUSTICE DEPARTMENT'S CLASSIFIED AFFIDAVIT, WHICH WAS SUBMITTED *EX PARTE* FOR *IN CAMERA* REVIEW

According to the D.C. Circuit, "[t]he problem of assuring that allegations of exempt status are adequately justified is the most obvious and the most easily remedied flaw in current procedures." *Vaughn*, 484 F.2d at 826.  Typically, the government submits affidavits to demonstrate the applicability of asserted exemptions and to assist a court's *de novo* review. *Allen*, 636 F.2d at 1291.  The question then becomes whether the affidavits "create a sufficient basis for making a decision," *Hayden*, 608 F.2d at 1384, or whether *in camera* inspection of the disputed documents is warranted.  As the D.C. Circuit explained in *Hayden*, the government's affidavits are entitled to substantial weight.  *Id.* at 1384; *see also Goldberg v. Dep't of State*, 818 F.2d 71, 78 (D.C. Cir. 1987) ("In deciding whether to grant summary judgment, district courts

should give the agency the opportunity to present detailed affidavits, and accord those affidavits 'substantial weight,' considering the agency's 'unique insights into what adverse effects might occur as a result of public disclosure.").

As a preliminary matter, absent *in camera* review of the disputed documents themselves, EFF challenges the propriety of this Court rendering a decision based on a classified declaration submitted by the Justice Department *ex parte* for *in camera* review. Pl.'s Reply Mem. In Support Of Pl.'s Mot. For *In Camera* Review 2-3. EFF questioned such a procedure both in its legal brief and during the hearing, even going so far as to state that it was unaware of any case in which a court properly relied on an *ex parte* affidavit submitted for *in camera* review to render a decision without also conducting an *in camera* review of the disputed documents. Pl.'s Reply Br. at 3 ("Here, the government urges the Court to forego *in camera* review of the disputed documents entirely and rely instead upon the *in camera*, *ex parte* Olsen declaration. Plaintiff is unaware of any authority suggesting that such a procedure would be appropriate under the circumstances present in this case."). EFF further asserts that the decisions in *Armstrong v. Exec. Office of the President*, 97 F.3d 575 (D.C. Cir. 1996), and *Lykins v. U.S. DOJ*, 725 F.2d 1455, 1465 (D.C. Cir. 1984), stand for the proposition that the use of *in camera* affidavits is disfavored; therefore, the Justice Department's *in camera* declaration should not be considered by the Court. Pl.'s Reply Br. 2-3.

Although EFF is correct that the use of *in camera* declarations generally is disfavored, *Armstrong*, 97 F.3d at 580, EFF overlooks the fact that in both cited cases the D.C. Circuit expressly acknowledged that *in camera* affidavits were permissible in national security cases.

-8-

*Armstrong*, 97 F.3d at 580 (favorably citing *Lykins* and acknowledging that "[i]n camera

affidavits are used more frequently in national security cases"); *Lykins*, 725 F.2d at 1465 ("We

have permitted such *in camera* affidavits in national security cases . . . and have stated that the

use of such affidavits is at the discretion of the trial court . . . ."). Furthermore, contrary to EFF's

assertion that it is improper to review classified affidavits *in camera* without also reviewing the

documents at issue, several cases suggest that an *in camera* review of affidavits alone not only is

permissible, but might be warranted in cases involving national security issues. *Public Citizen v.

Dep't of State*, 276 F.3d 634 (D.C. Cir. 2002) (the D.C. Circuit itself reviewed a classified

declaration without also conducting an *in camera* review of the disputed documents and affirmed

the district court, which also had reviewed only the classified declaration); *Salisbury v. United

States*, 690 F.2d 966, 973 n.3 (D.C. Cir. 1982) (rejecting the argument that *in camera* review of

classified affidavits was improper and noting that "resort to such proceedings may be necessary

or desirable" in national security cases); *Phillippi v. CIA*, 546 F.2d 1009, 1013 (D.C. Cir. 1976)

(disagreeing that *in camera* review of only the government's affidavits was improper but

remanding with directions to the district court to "attempt to create as complete a public record as

is possible"); *Edmonds v. FBI*, 272 F. Supp. 2d 35, 46 n.4 (D.D.C. 2003) ("Courts are permitted

to review classified affidavits *ex parte* and *in camera* in national security cases."), *rev'd on other

grounds*, 417 F.3d 1319 (2005). As the D.C. Circuit emphasized in *Armstrong*, however, the

Court must explain its reasons for using an *in camera* declaration:

> Whereas the use of in camera review is generally encouraged, the use of in camera
> affidavits has generally been disfavored. Case law in this Circuit is clear that when
> a district court uses an in camera affidavit, it must both make its reasons for doing
> so clear and make as much as possible of the in camera submission available to the

opposing party. *Lykins v. DOJ*, 233 U.S. App. D.C. 349, 725 F.2d 1455, 1465 (D.C. Cir. 1984). These procedures ensure that the use of such affidavits has the smallest possible negative impact on the effective functioning of the adversarial system. *Id.* In camera affidavits are used more frequently in national security cases, but there is no reason to think that district court judges in national security cases are freed from the requirements imposed by Lykins. In this case the district court judge failed to explain why the use of an in camera affidavit was appropriate and why none of that affidavit could be shared with appellant. In the absence of these explanations, the use of the in camera affidavit arguably was error.

97 F.3d at 580-81.

In this case, the Justice Department's first Olsen declaration was filed in the public record and consisted of nine pages explaining the procedures the Justice Department employed to search for the documents EFF requested, the bases for withholding any responsive documents pursuant to the asserted FOIA exemptions, and the reasons disclosure would jeopardize national security. Public Olsen Decl. ¶¶ 7-31. The public declaration indicated, however, that the number or volume of documents responsive to EFF's FOIA request, as well as the specific information contained in those documents, implicated classified information that could not be explained further "in an unclassified setting." *Id.* ¶¶ 9, 14, 18-22. Because of the classified nature of the responsive documents, the Justice Department's public declaration was quite generalized and conclusory in its descriptions and explanations. The declaration did identify, however, that the Justice Department located two documents or categories of documents that were responsive to EFF's request, the documents were classified as SECRET or TOP SECRET, and some of the information contained in the documents was further classified as Sensitive Compartmented Information, also referred to as SCI, "which means that it is subject to special access and handling requirements necessary to maintain its strict confidentiality and prevent its unauthorized

-10-

disclosure." *Id.* ¶ 14.  Overall, though, the Justice Department's public declaration offered only enough information to hint at the basic gist of the responsive documents without affording enough detail for the Court to conduct its required *de novo* review and critically assess whether the documents were properly withheld in their entirety pursuant to the asserted FOIA exemptions, even after granting the declaration the substantial weight to which it was due. Consequently, although the Justice Department submitted the *ex parte* classified document without solicitation from the Court, the Court nevertheless found it appropriate to review that declaration *in camera* and notes that it likely would have required the Justice Department to file additional documentation further elucidating its reasons for withholding the responsive documents had the agency not fortuitously proffered the classified declaration on its own.

There is nothing untoward about the Court's decision to review the *ex parte* declaration *in camera* given the well-established principle that "the agency's analysis on the public record ordinarily 'would not have to contain factual descriptions that if made public would compromise the secret nature of the information . . . .'" *Hayden*, 608 F.2d at 1384-85 (quoting *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973)).  The D.C. Circuit has recognized that "[w]hen the itemization and justification are themselves sensitive . . . to place them on public record could damage security in precisely the way that FOIA Exemption 1 is intended to prevent."  *Id.* at 1384. Because the Justice Department's public declaration regarding the classified nature of the responsive documents – as well as the classified nature of the justifications outlined in the *ex parte* declaration – are entitled to deference, *Center for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 927 (D.C. Cir. 2003), the Court exercised its discretion to proceed in the manner prescribed in

*Hayden*:

> We recognize that a fuller public record could enhance the adversary process; but it could also reveal sensitive information. This would violate Exemption 1, for its basic purpose is to ensure that the FOIA will [n]ot require disclosure of any such sensitive material unless judicial scrutiny finds it warranted. *The proper procedure for a district court, then, is to accept sensitive affidavits In camera, as was done here. If the material in the affidavit then appears nonsensitive, the court can order it released* . . . . In a limited range of security cases, it is simply not possible to provide for orderly and responsible decisionmaking about what is to be disclosed, without some sacrifice to the pure adversary process. By providing for In camera review, Congress has acknowledged that judges must sometimes make these decisions without full benefit of adversary comment on a complete public record.

*Hayden*, 608 F.2d at 1385 (emphasis added). Accordingly, the Court finds no merit in EFF's

contention that *in camera* review of the Justice Department's *ex parte* classified affidavit would

be improper.

III.    WHETHER THE JUSTICE DEPARTMENT CONDUCTED THE REQUIRED
        SEGREGABILITY ANALYSIS

EFF challenges the substance of the Justice Department's declarations on the grounds that

the agency failed to conduct a segregability analysis and the peculiar facts of this case suggest

that some portions of the withheld documents are segregable. Pl.'s Opp'n Br. 6, 10. EFF argues

that the Foreign Intelligence Surveillance Act of 1978 ("FISA"), 50 U.S.C. § 1801 *et seq.*,

anticipates that the requested documents can be provided in an unclassified form given that it

authorizes the FISC to establish rules and procedures that must be submitted in an unclassified

form to specified persons and entities. *Id.* at 10 (citing 50 U.S.C. § 1803(f)). EFF also points to

a Foreign Intelligence Surveillance Court of Review opinion that was publicly released with

redactions – as well as the public version of a brief the Justice Department submitted in that

proceeding – as "strong precedent for public disclosure of the type of material at issue here,

-12-

subject to appropriate and limited redaction." *Id.* at 12.  EFF concludes its segregability

argument by asserting that Judge Colleen Kollar-Kotelly, Presiding Judge of the FISC, sent a

letter to Senators Leahy and Specter responding to their request for copies of the FISC orders and

stated in that letter that she has "no objection to this material being made available to the

[Judiciary] Committee." *Id.* Ex. A.  EFF argues that "[t]he fact that the requested documents

concern a matter of national security does not insulate the government from FOIA's segregability

command." *Id.* at 13.

  The Justice Department disputes EFF's claim that it failed to conduct a segregability

analysis and argues that both of its declarations contain enough specificity for this Court to

conclude that the *entirety* of the responsive documents are shielded from disclosure pursuant to

FOIA Exemptions 1, 3, and 7(A). Def.'s Reply Br. 3.  The Justice Department further argues

that the provisions of the FISA cited by EFF "have no bearing on this case" because the cited

provisions relate only to rules and procedures necessary to administer the FISC's own

responsibilities under the statute and do not relate to rules and procedures the FISC establishes to

govern the Justice Department's activities. *Id.* at 5.  The Justice Department also challenges the

notion that disclosure of a single Foreign Intelligence Surveillance Court of Review opinion

supports the proposition that the responsive documents at issue here also should be publicly

disclosed. *Id.*  Finally, with regard to Judge Kollar-Kotelly's comment in her letter to the

Senators, the Justice Department argues that, in recognition of the government's expertise and

authority in the realm of national security, Judge Kollar-Kotelly properly referred the matter to

the Justice Department. *Id.* at 6.

Having carefully and critically reviewed the Justice Department's declarations, the Court is inclined to agree that the government has met its burden of showing with reasonable specificity that the responsive documents are entirely exempt from disclosure pursuant to FOIA Exemptions 1, 3, and 7(A) and that *in camera* review of the documents is unwarranted. The Court stated above that the Justice Department's declarations are entitled to substantial weight. Properly applying this standard, "summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980). As the D.C. Circuit has observed:

> If the agency's statements meet this standard, the court is not to conduct a detailed inquiry to decide whether it agrees with the agency's opinions; to do so would violate the principle of affording substantial weight to the expert opinion of the agency. Judges, moreover, lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case.

*Id.* at 148.

Here, the government submitted two declarations to support its application of FOIA Exemptions 1, 3, and 7(A). As mentioned previously, EFF does not contest the applicability of these particular exemptions to the information in the documents at issue; instead, EFF argues only that the government's declarations fail to show that a segregability analysis was conducted to determine whether portions of the documents are non-exempt and may be disclosed. Nonetheless, the Court undertook a thorough and judicious review of the Justice Department's declarations, while also affording them the substantial weight to which they are entitled under the circumstances, and concludes that they satisfy the legal standards and provide the reasonable

-14-

specificity necessary to hold that the asserted exemptions apply.  Furthermore, there has been no

allegation that agency bad faith is at issue in this case or that there is contradictory evidence in

the record that counsels against granting summary judgment.

The government's classified declaration provides more explicit details about the

responsive documents, significantly more so than the public declaration, such that the Court was

able to verify the government's assertions about the levels of classification involved as well as

the sensitivity of the documents' contents, including specific operational details such as

intelligence sources, methods, procedures, and identifying information that could, as the

government argued, "giv[e] our adversaries a window into U.S. intelligence collections

activities" and the targets involved.  Public Olsen Decl. ¶ 19.  To the extent feasible, the

government made available to the public – via the public declaration and the redacted classified

declaration – information about the disputed documents' contents without actually revealing

specific details that could harm national security.  The unredacted classified declaration, on the

other hand, reveals specific details and appears to be properly classified and explicit enough for

the Court to conclude that the asserted FOIA exemptions apply without the need for *in camera*

inspection of the responsive documents themselves.

Even when the government carries its burden of showing with reasonable specificity that

FOIA exemptions apply to requested documents, however, the government is still obligated to

conduct a segregability analysis to determine whether there are any portions of the documents

that can be disclosed without risk to the interests the exemptions are intended to protect.  *Schiller*

*v. NLRB*, 964 F.2d 1205, 1209 (D.C. Cir. 1992).  "It is error for a district court to simply approve

the withholding of an entire document without entering a finding on segregability, or the lack

thereof." *Id.* at 1210. "The 'exemption by document' approach has been rejected by our

opinions . . . ." *Ray v. Turner*, 587 F.2d 1187, 1197 (D.C. Cir. 1978) (per curium). "The agency

may not rely on that approach even in a national security context." *Id.*

The Court recognizes that EFF is disadvantaged in terms of challenging the Justice

Department's unredacted classified declaration. It cannot be gainsaid that "unless the

segregability provision of the FOIA is to be nothing more than a precatory precept, agencies must

be required to provide the reasons behind their conclusions in order that they may be challenged

by FOIA plaintiffs and reviewed by the courts." *Mead Data Cent., Inc. v. United States Dep't of*

*the Air Force*, 566 F.2d 242, 261 (1977). EFF raises a fair point by questioning whether the

Justice Department conducted the required segregability analysis based on the public declaration

and the redacted version of the classified declaration, neither of which explicitly mention the

term "segregability" in any paragraph. However, the Justice Department's March 9, 2007, letter

to EFF's counsel expressly stated that "none of the information being withheld is appropriate for

discretionary disclosure." Def.'s Mot. For Summ J. Ex. D (Letter from Olsen to Sobel of

3/9/2007). In addition, the Justice Department's public declaration stated that this same letter

"advised EFF that the responsive documents were being withheld in their entirety pursuant to

FOIA's exemption provisions." Public Olsen Decl. ¶ 10. Moreover, the redacted version of the

Justice Department's classified declaration stated that "the documents were properly withheld in

their entirety under FOIA Exemptions 1, 3, and 7(A) . . . ." Classified Olsen Decl. ¶ 4 (redacted

version). Describing the purpose of the classified declaration, the Justice Department again

repeated its assertion that "the documents responsive to the FOIA request made by EFF were properly withheld in their entirety." *Id.* ¶ 5. The final paragraph of that declaration further concluded that "an original classification authority within OIPR has reviewed the responsive documents and has determined that they are currently and properly classified in their entirety" and "these documents were properly withheld under FOIA Exemptions 1, 3, and 7(A) in their entirety." *Id.* ¶ 26. Considered as a whole, the Court views these statements as making clear that the Justice Department assessed the documents and determined that no portion of the information contained in them was segregable, notwithstanding the fact that the government never explicitly referred to the term "segregability" in the declarations. Because the Justice Department claimed total exemption, there understandably was no basis for preparing a detailed *Vaughn*[7] index of

_____

[7]        It goes without saying that *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), is the seminal case in this circuit regarding the standard the government must meet to demonstrate the reasonable specificity of its affidavits. In *Vaughn*, the D.C. Circuit took up a challenge to the Civil Service Commission's decision to withhold documents containing evaluations of agencies' personnel management programs. 484 F.2d at 821. The government supported its case based on an affidavit that the D.C. Circuit described as "conclusory," but that served as the basis for the trial court's decision to grant summary judgment. *Id.* at 823. After discussing the burdens on the adversary system that FOIA challenges pose, and acknowledging that the "present method of resolving FOIA disputes actually *encourages* the Government to contend that large masses of information are exempt, when in fact part of the information could be disclosed," the D.C. Circuit outlined procedures to govern the classification of exemption claims and the specificity required for the government to carry its burden. *Id.* at 826-28. The D.C. Circuit made clear that "courts will simply no longer accept conclusory and generalized allegations of exemptions . . . but will require a relatively detailed analysis in manageable segments." *Id.* at 826. The D.C. Circuit explained that "[a]n analysis sufficiently detailed would not have to contain factual descriptions that if made public would compromise the secret nature of the information, but could ordinarily be composed without excessive reference to the actual language of the document." *Id.* at 826-27. The D.C. Circuit went on to recommend the so-called *Vaughn* index, which requires the government to "specify in detail which portions of the document are disclosable and which are allegedly exempt . . . . [B]y formulating a system of itemizing and indexing that would correlate statements made in the Government's refusal justification with the

non-exempt material. The Court finds that the Justice Department's classified declaration affords the reasonable specificity necessary for this Court to agree that nothing in the responsive documents is non-exempt and, therefore, subject to disclosure.

The Court also agrees with the government that the mere fact that some FISC rules and procedures are prepared in an unclassified form, and a single Foreign Intelligence Surveillance Review Court decision was redacted and made publicly available, do not, *ipso facto*, support the conclusion that all FISC documents contain segregable material that is not exempt. With regard to the FISC rules and procedures EFF claims contemplate public disclosure, EFF cited a section of the FISA that states:

> (f) (1) The courts established pursuant to subsections (a) and (b) may establish such rules and procedures, and take such actions, as are reasonably necessary to administer their responsibilities under this Act.
>
> (2) The rules and procedures established under paragraph (1), and any modifications of such rules and procedures, shall be recorded, and shall be transmitted to the following:
>
> > (A) All of the judges on the court established pursuant to subsection (a).
> > (B) All of the judges on the court of review established pursuant to subsection (b).
> > (C) The Chief Justice of the United States.
> > (D) The Committee on the Judiciary of the Senate.
> > (E) The Select Committee on Intelligence of the Senate.
> > (F) The Committee on the Judiciary of the House of Representatives.
> > (G) The Permanent Select Committee on Intelligence of the House of Representatives.
>
> (3) The transmissions required by paragraph (2) shall be submitted in unclassified form, but may include a classified annex.

---

actual portions of the document." *Id.* at 827.

50 U.S.C. § 1803(f).  The section of the FISA statute that contains this subparagraph is titled

"Designation of Judges" and establishes the structure, composition, and tenure of the judges that

serve on the FISC.  As the government pointed out, the rules and procedures referenced in the

subparagraph cited by EFF appear to apply to the FISC's own activities, not to rules and

procedures the FISC adopts to govern the activities of other government agencies, such as the

Justice Department.  More to the point, though, an earlier subparagraph in the same section of the

statute states that "applications made and orders granted . . . shall be maintained under security

measures established by the Chief Justice in consultation with the Attorney General and the

Director of National Intelligence."  50 U.S.C. § 1803(c).  In light of the fact that the statute

clearly states that the FISC's orders shall be "maintained under security measures," and it is

undisputed that the documents at issue in this case are "orders" issued by the FISC, the Court is

unable to accept EFF's premise that the FISA statute anticipates public disclosure of the

responsive documents.  *Id.*

  The Court also is not persuaded that release of a Foreign Intelligence Surveillance

Review Court opinion confirms there likely are segregable materials at issue here, nor does Judge

Kollar-Kotelly's comment in a letter to Congress call into question the documents' segregability.

The release to the public of a single Foreign Intelligence Surveillance Review Court opinion is

no different than the sporadic issuance of public opinions relating to sealed grand jury matters.

The mere fact that such a decision is issued for public viewing, whether redacted or not, does not

by default mean that all other such decisions must also contain information subject to public

disclosure.  EFF cited to no legal authority to support such a contention and the Court has

carefully reviewed the Justice Department's declarations and concludes that they are reasonably specific and demonstrate that the asserted FOIA exemptions apply to the documents as a whole.

Likewise, EFF interprets Judge Kollar-Kotelly's comment in her letter to Congress too broadly for this Court to agree that it suggests there is segregable information.  Judge Kollar-Kotelly explicitly acknowledged that the orders Senators Leahy and Specter requested "contain classified information" and properly referred the congressmen to the Justice Department for a determination whether the documents may be released to them.  Furthermore, Judge Kollar-Kotelly's statement that she did not object to releasing the documents to the senators in no way serves as a blanket assertion that the document may be made available to the public.  To the contrary, Judge Kollar-Kotelly gave no indication whatsoever about whether her lack of objection to disclosure anticipated disclosure in an unclassified or other public form.  It is equally likely that Judge Kollar-Kotelly was simply noting her lack of objection to disclosing the documents to the congressmen in their classified form, assuming the Justice Department determined that was appropriate under the circumstances and the congressmen possessed the requisite security clearances.  In the final analysis, any speculation about what Judge Kollar-Kotelly meant by her comment is exactly that – pure speculation.

IV.    EFF'S MOTION FOR *IN CAMERA* REVIEW

EFF moved for *in camera* review of the responsive documents at issue in this case on the ground that "the government's failure to even consider the segregability issue should leave the Court profoundly concerned that the government has withheld information to an unjustified extent."  Pl.'s Opp'n Br. 14.  EFF does not dispute that the decision to conduct an *in camera*

review of the responsive documents is subject to the court's discretion,[8] *Spirko v. United States Postal Serv.*, 147 F.3d 992, 997 (D.C. Cir. 1998), but argues that such a review is warranted here because "there is a 'greater call for *in camera* inspection' in 'cases that involve a strong public interest in disclosure.'" Pl.'s Opp'n Br. 16 (quoting *Allen*, 636 F.2d at 1299).

EFF is correct that, although the D.C. Circuit has indicated on more than one occasion that *in camera* review is disfavored and deemed a last resort,[9] it nonetheless has ordered such review in certain cases. For example, in *Allen*, the CIA claimed a 15-page document that contained information about Lee Harvey Oswald's activities in Mexico City during the weeks leading up to John F. Kennedy's assassination was properly withheld from a researcher who requested it because the document was subject to FOIA Exemptions 1, 3 and 4. 636 F.2d at 1288. The district court granted summary judgment in favor of the CIA based on submitted affidavits and without conducting an *in camera* inspection. Reviewing the applicability of Exemptions 1 and 3, the D.C. Circuit evaluated the adequacy of the CIA's affidavits and found them wholly deficient. With regard to Exemption 1, the D.C. Circuit observed that the CIA's affidavits were "drawn in conclusory terms that merely parrot[ed] the language of the [applicable] Executive Order" and failed to demonstrate that the CIA complied with the Executive Order's procedural requirements, which included identifying the original classifier and the date for declassification or review. *Id.* at 1292. The D.C. Circuit took exception to the "[t]he

---

[8]     Pl.'s Opp'n Br. 16.

[9]     *See Spirko*, 147 F.3d at 997 ("[T]his court has repeatedly observed that a district court should not undertake *in camera* review of withheld documents as a substitute for requiring an agency's explanation of its claimed exemptions in accordance with *Vaughn*.").

affidavit's reliance on such expansive phrases as 'intelligence sources and methods,' 'sequence of events,' and 'process,'" finding that such broad descriptions "fall[] far short of providing the 'reasonable specificity' that this court has held is required for summary judgment without in camera inspection." *Id.* at 1292-93. The D.C. Circuit noted similar defects with regard to the affidavits submitted to support application of Exemption 3, which "do little more than parrot the language of Section 4039(d)(3) by stating that 'intelligence sources and methods' will be compromised if the document is disclosed." *Id.* at 1294.

After reviewing the legislative history of the FOIA amendments permitting courts to conduct *in camera* inspections, the D.C. Circuit outlined a number of factors to consider to determine whether *in camera* review was 'plainly necessary,' a standard derived from the legislative history of the statute.[10] *Id.* at 1297-98. These factors include (1) judicial economy, (2) the conclusory nature of the government's affidavits, (3) whether there is evidence of bad faith by the government, (4) whether there is a dispute about the applicability of an exemption based on the document's contents, (5) whether the government proposes *in camera* review, and (6) whether there is a strong public interest in disclosure. *Id.* at 1299; *Carter v. United States Dep't of Commerce*, 830 F.2d 388, 393 (D.C. Cir. 1987). Finding *in camera* review plainly necessary, the D.C. Circuit cited the following factors that swayed its decision: because the document was only 15 pages it would be more efficient and cost-effective to conduct *in camera*

---

[10]     "The Conference Report on the authorizing amendment [permitting courts to conduct *in camera* inspections] explicitly states that 'while *in camera* examinations need not be automatic, in many situations it [sic] will plainly be necessary and appropriate." *Carter v. United States Dep't of Commerce*, 830 F.2d 388, 392 (D.C. Cir. 1987). *Accord Founding Church of Scientology, Inc. v. NSA*, 610 F.2d 824, 830 (D.C. Cir. 1979).

review, particularly when the affidavits submitted in support nearly total the length of the document itself; the government argued that it could not provide greater specificity about the document without revealing the very information being protected; the contents of the document were in dispute; the CIA expressed its willingness to provide the document for the court's inspection; and the FOIA request appeared to be motivated to some extent by the desire to determine whether the government acted improperly by impeding an assassination investigation involving "an area of great public interest." *Allen*, 636 F.2d at 1299-1300. The D.C. Circuit found the last factor to be particularly compelling, as demonstrated by its comment that "[s]uch an FOIA [sic] request, in an area of great public interest and that seeks to demonstrate the impropriety of the Agency's actions, makes in camera inspection especially appropriate." *Id.* at 1300.

Without question, the legality of the Executive Branch's warrantless surveillance program has been the subject of intense public scrutiny and is a matter of great public interest and importance. But the Court does not interpret the decision in *Allen* as holding that in any case involving an area of great public interest courts must conduct an *in camera* inspection of disputed documents. To arrive at the result in *Allen*, the D.C. Circuit first determined that the government's affidavits were defective, which comports with established precedent concluding that *in camera* inspection is appropriate in cases involving classified documents, or documents implicating national security interests, only when the government's proffered affidavits lack the requisite specificity or are otherwise deficient. *Hayden*, 608 F.2d at 1388 ("When substantial weight is given these affidavits, under the standards we have described, summary judgment for

-23-

the Agency is appropriate, without In camera review of the documents, unless there is a

defect . . . ."); *see also Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 59 (D.C.

Cir. 2003); *Armstrong*, 97 F.3d at 580, *Halperin*, 629 F.2d at 148.  "This Circuit has repeatedly

held that 'when the agency meets its burden [under the FOIA] by means of affidavits, *in camera*

review is neither necessary nor appropriate."  *Center for Auto Safety v. EPA*, 731 F.2d 16, 23

(D.C. Cir. 1984).  Even when the government "fails to provide a sufficiently detailed explanation

to enable the district court to make a de novo determination of the agency's claims of exemption,

the district court then has several options, including inspecting the documents *in camera*,

requesting further affidavits, or allowing the plaintiff discovery."  *Spirko*, 147 F.3d at 997.

Because the Court found the Justice Department's declarations sufficient to conduct a *de novo*

review and verify the applicability of the asserted FOIA exemptions, it will exercise its discretion

to decline an *in camera* inspection of the responsive documents.

<u>**CONCLUSION**</u>

For the reasons set forth above, the Court concludes that the Justice Department has met

its burden of showing with reasonable specificity that FOIA Exemptions 1, 3, and 7(A) apply to

the responsive documents at issue in this case and has created as full a public record as possible

concerning the nature of the responsive documents and the justification for their withholding

without exposing classified national security information.  *Hayden*, 608 F.2d at 1384.  Together,

the two declarations submitted by the Justice Department provide a sufficient basis for making a

decision and the Court agrees that there appears to be no reasonably segregable portions of the

documents that may be released to the public.  *Id.*  There being no contradictory evidence in the

record or evidence of agency bad faith, *Halperin*, 629 F.2d at 148, the Court will grant

[7] Defendant's Motion for Summary Judgment and deny [10] Plaintiff's Cross-Motion for *In Camera* Review.  An appropriate order will accompany this Memorandum Opinion.

August 14, 2007                              _____/s/ *Thomas F. Hogan*_____
                                                           Thomas F. Hogan
                                                           Chief Judge